**LAW OFFICES OF KEVIN JENSEN, PLLC**
ATTORNEYS and COUNSELORS at LAW
3740 EAST SOUTHERN AVE.
SUITE 210
MESA, ARIZONA 85206
TELEPHONE (480) 632-7373
FACSIMILE (480) 632-8383
kevin@jensenlawaz.com

Kevin Jensen, State Bar No. 021524

*Attorneys for Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RACHAEL EARL, and Individual, | **CASE NO**. 2:10-bk-27333 |
| Plaintiff, | **ADVERSARY COMPLAINT** |
| vs. | **VIOLATION OF RESPA<br>INJUNCTION<br>QUIET TITLE<br>ACCOUNTING** |
| US BANK NATIONAL ASSOCIATION AS TRUSTREE FOR GSAA 2007-9 BY ITS ATTORNEY IN FACT WELLS FARGO BANK N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE INC. | **Honorable** Sarah Sharer Curley |
| | **Action Filed**: October 22, 2010 |
| DOES 1-10,000 | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1. This complaint is filed primarily to get information the Defendants are concealing. Plaintiff cannot plead a full and complete case and include all proper parties until this information is obtained.

2. Plaintiff is informed and believes this loan has been paid off in full by third parties and that nothing is owed by Plaintiff, hence an accounting cause of action is included.

3. At its core, this case is about predatory lending practices, which have caused Plaintiff to lose all of the equity in her home, have forced her into bankruptcy, and caused a financial crisis of historic proportions.

4. The Defendants in this case have violated panoply of state and federal lending laws and consumer protection and fair debt reporting laws. They have committed fraudulent and deceptive acts, against an unsuspecting citizen.

5. Plaintiff, by virtue of her complaint, seeks judicial redress for what has heretofore been a free-for-all.

6. The bottom line here was, Defendants, being phony lenders and mortgage brokers, knew that the only way Plaintiff could pay for the Subject Loan was to continue to strip equity out of her home through repeated refinancing. Defendants' actions were classic predatory lending practices.

7. The United States Office of the Comptroller of Currency has opined on what it characterized as a touchstone of predatory lending, i.e., where the lender fails to determine whether a borrower can reasonably be expected to repay the loan from resources other than the collateral in the home.

8. O.C.C. Policy Letter AL2003-2. Elaborating, the Office of the Comptroller noted that, when a lender relies upon the liquidation value of the borrower's collateral, it commits classic acts of predatory lending. The Defendants in this case could not possibly

have relied upon anything other than the liquidation value of the collateral in Plaintiff's home as the basis for granting her the loan at issue in this case.

9. Specifically, one of the key consumer protections under RESPA is the ability of a borrower to send a Qualified Written Request ("QWR") to its loan servicer asking for an accounting of all money owing, late fees charged, etc.

10. When the borrower sends a QWR to its lender, the lender has 20 days to acknowledge receipt of the QWR and 60 days to provide a substantive response.

11. On August 4, 2009, Plaintiff sent a QWR to Defendant Wells Fargo Home Mortgage ("Wells"), who at the time had been appointed by US Bank National Association as Trustee for GSAA 2007-9 as the servicer and attorney in fact for the Subject Loan. Defendant Wells failed to respond or acknowledge Plaintiff's QWR.

12. Notably, Plaintiff requested documentation reflecting the identity of the true owner and holder of the Note and mortgage as set forth below. Defendants failed to provide that information.

13. On information and belief, Plaintiff's loan was securitized. Cases throughout the United States have found these loans unenforceable and in some cases sanctioned the financial institutions and their counsel. There are now hundreds of other cases throughout the United States finding that the securitized loans are not enforceable.

14. As is typical when a loan is securitized, the funds Plaintiff borrowed did not come from any source that Plaintiff could readily identify. Instead, the money for the Subject Loan came from "investors," the identity of whom is concealed by the named Defendants.

15. Plaintiff cannot file a complete complaint, and in particular include all interested parties and Defendants, because the named Defendants routinely conceal this information, and maintain it tightly within their control.

16. The parties that have interest in this matter, and who are potential Defendants include, but are not necessarily limited to, various investors who actually provided the funds for the loan (which could number in the thousands since loans were "pooled"), servicers, master servicers, subcontractors, securities administrators, custodians, and others, which Plaintiff cannot include at this time because the named Defendants have concealed this information from her.

17. On information and belief, Plaintiff's loan is part of a Special Purpose Vehicle ("SPV"), which issues securities to certificate holders.

18. On information and belief, the Defendants have no authority to modify the loan under the terms governing the servicing of loans within an SPV. In many cases, the agent or trustee of the SPV cannot modify the loan without the consent of the certificate holders.

19. The SPV and certificate holders are necessary parties. The Defendants, however, are the only parties that have access to the information identifying the SPV and certificate holders.

20. Defendants are required by RESPA to reveal the identity of the SPV and the certificate holders. Rather than comply with their legal duty, Defendants have, instead, intentionally concealed this information.

21. Defendants violated TILA during the closing phase of the Subject Loan. Specifically, they failed to provide Plaintiff with the necessary TILA disclosures prior to the closing date of the loan.

21. This failure is particularly critical in this case because the TILA disclosure is one of the simplest ways that a borrower can see what the payments will be over the life of the loan without having to read through the entire Promissory Note, which is typically lengthy and complex. If the Defendants had provided Plaintiff with the TILA disclosures three days prior to closing the Subject Loan, she would have been able to see what her monthly payments would be over the life of the loan. Indeed, one of the purposes of TILA is to provide borrowers with meaningful disclosures to enable them to become informed about the cost of loans and to be able to comparison shop before they sign the final loan documents.

22. The confluence of events described above has resulted in Plaintiff's house being stripped of all equity. Plaintiff has been driven into bankruptcy. Defendants have unlawfully foreclosed on Plaintiff's home. This egregious interfusion of predatory lending, and wrongful foreclosure, has resulted in horrific and devastating financial losses for this vulnerable and unsuspecting citizen. This action is to seek redress and restore to Plaintiff the financial security she had prior to this predatory assault on her finances.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction based upon federal question under 12 U.S.C. § 2614. This is an action asserting violations of federal statutes commonly known as, RESPA.

24. After Plaintiff receives the information required to be provided to her, she intends to allege violations of statutes commonly known as TILA, Regulation Z, the Fair Credit Reporting Act, and the Fair Debt Collection practices act, with additional claims under other federal laws and Arizona law and the court will have subject matter jurisdiction based upon federal question under 28 U.S.C. § 1331 and 1367, and 15 U.S.C. §1692, and 15 U.S.C. § 1640(e).

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

26. This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of Arizona, County of Maricopa, and thus have sufficient contacts.

27. This Court has jurisdiction over state claims by virtue of pendent jurisdiction.

**DEFINITIONS**

28. As used in this Complaint:

29. The term "RESPA" means the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 et seq.

## PARTIES

30. Plaintiff Rachael Earl, an individual, maintains her primary residence at 1311 South Claiborne Avenue, Gilbert, Arizona 85296. ("Subject Residence"). Plaintiff has resided at the Subject Residence for over 4 years.

31. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant Freedom Home Mortgage Corporation ("FHMC") was an Arizona corporation and was in the business of providing mortgage products and services in the State of Arizona and was the loan servicer until on or about June 2007.

32. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendant Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage ("Wells") was a corporation doing business in Arizona and was a loan servicer as of June 2007.

33. Plaintiff is informed and believes and thereon alleges that US Bank National Association ("US Bank") is the trustee of a special purpose vehicle which was probably a trust into which the Subject Loan was placed as part of a pool of loans that were securitized.

34. Plaintiff is informed and believes and thereon alleges that GSAA 2007-9 ("GSAA"), was and is a corporation that was formed, as part of the securitization process in order to facilitate the sale of Certificates to investors according to a Pooling and Service Agreement and other agreements, and was the "Registrant" in filings with the Securities and Exchange Commission and acted as a "Depositor".

35. Plaintiff is informed and believes, and thereon alleges, that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and /or acted with their consent, ratification and authorization, and in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

36. In the course of servicing the Subject Loan, Defendants have violated RESPA, and failed to provide material information required to be disclosed under RESPA. Until Plaintiff obtains the information she is entitled to, she cannot file a complaint that will include necessary parties and include other important information.

37. Once Plaintiff obtains this information she will seek to amend this complaint or dismiss it without prejudice and file a new action. In the mean time she temporarily seeks relief only for violations of RESPA, 12 U.S.C. § 2605, for temporary injunctive relief to stop the eviction process, and for Quiet Title.

## **FACTUAL ALLEGATIONS**

38. The core of this action arises out of a loan, provided by Defendants and secured by Plaintiff's home, and the subsequent foreclosure related activity on the Subject Residence.

39. The violations alleged herein began prior to Plaintiff entering into the Subject Loan. Before the closing of the Subject Loan, Defendants were supposed to have provided Plaintiff with the TILA disclosures mandated by Federal Law. A TILA disclosure is a straightforward disclosure of the payment terms of a loan over the life of the loan. Federal Law recognizes the need for such disclosures because most borrowers

do not have the legal and financial sophistication to read promissory notes. Defendants violated TILA by withholding the TILA disclosures at the pre-closing phase of the Subject Loan, however, that will be included in a cause of action in an amended complaint.

40. On or about April 12, 2007, Plaintiff signed a Deed of Trust for the Subject Loan, as reflected in Exhibit "A" attached hereto. At that time, Defendants told Plaintiff that she was getting the best loan she could get and promised that they were acting in Plaintiff's, and only Plaintiff's, best interest.

41. The Subject Loan falls within the protections accorded to consumers by the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. and its implementing regulations, 12 C.F.R. Part 226 "Reg. Z".

42. The compliance requirements of TILA are triggered at the time the loan application is made. Within certain times after the loan application is submitted, Defendants were required to perform certain acts. They, however, failed to do so. For example, Defendants were required to provide Plaintiff with certain disclosures pursuant to TILA. Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the amount financed and the finance charge, among other things, in connection with the Subject Loan.

43. The TILA disclosures are supposed to be segregated from other documents and any unrelated information per Reg. Z §226.17(a)(1).

44. TILA disclosures are required to be provided "before consummation" of the loan. (Reg. Z §226.179b). TILA disclosures are one of the most straight-forward pieces

of loan documentation. They provide the borrower with a breakdown of monthly payments over the life of the loan. One of the purposes of TILA disclosures is to ensure that borrowers understand the loan they are acquiring, and secondarily to allow borrowers to comparison shop before entering into the loan.

45. Plaintiff has never received, nor believes exists, a Notice of Default from the Defendants as set forth in the Deed of Trust, and therefore does not have a clear indication of the amount claimed to be in default.

46. On information and belief, Plaintiff alleges that the amount claimed to be in default is incorrect and/or includes charges not permitted under the loan.

47. In fact, Plaintiff believes this loan was paid off in full by "credit enhancements," probably the most common example being "AIG" who provided the enhancements to the investors.

48. On or about August 4, 2009, Plaintiff sent a Qualified Written Request under RESPA requesting an accounting, attached hereto as Exhibit "B".

49. According to RESPA, when a borrower submits a QWR, the lender has 20 days to acknowledge receipt of the QWR and, within 60 days, to perform an adequate investigation, provide the requested information, make any corrections to the borrower's account, including crediting any erroneous late charges or penalties, provide written notification of these credits, provide a written explanation of why the account is correct, and include the name and telephone number of the service representative.

50. Under §2943, Defendants had 20 days to respond and provide any modifications to the promissory note, including any assignments.

51. Specifically, the TILA documents for the Subject Loan were not provided to Plaintiff three days in advance of the closing. Rather, they were provided on the day the loan closed, April 12, 2007. The loan application, TILA disclosure, Good Faith Estimate, and other documents that were given to Plaintiff show that they were signed the same day as the loan was consummated. Not only that, but, all of the documents provided to Plaintiff at the closing were signed in one large stack at the same time, and therefore not properly segregated.

52. Defendant Wells failed to respond to Plaintiff's QWR, and the §2943 demand. As such, Plaintiff is unsure of how Wells became a party to this transaction and is unsure of other parties involved.

53. Defendant Wells has made false statements concerning the amounts owing at various points in time to Plaintiff in order to defraud her. Wells has never shown the amount claimed owing on the loan has been calculated properly and on information and belief Wells cannot do so. On information and belief, Defendants unlawfully initiated non-judicial foreclosure proceedings against Plaintiff, and never recorded or delivered a Notice of Default, and have improperly claimed amounts not owing.

55. On or about January 16, 2009, Defendant US Bank recorded a Notice of Trustee's Sale in connection with the Subject Residence for default under the above-referenced deed of trust, again based on alleged defaults not owed on the loan of $500,000. On information and belief this was not the correct amount owing and Defendant Wells, the servicer, failed and refused to provide an accounting in response to statutory demands for such.

56. On information and belief, Plaintiff alleges that Defendant Wells systematically conspired to foreclose unlawfully when it is unwilling or unable to accurately set forth the amounts in default and knows or should know that Defendant US Bank has assigned and/or sold the Note, is not the real party in interest to foreclose, and fraudulently conceals this information.

57. On information and belief, Plaintiff alleges that Defendants, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In pursuing the non-judicial foreclosure, Defendants represented that they have the right to payment under the Note in connection with the Subject Loan, payment of which was secured by a deed of trust. Whereas, in fact, the Defendants were not in possession of the Note and they were neither holders of the Note or non-holders of the Note entitled to payment, and therefore they have foreclosed without rights under the law.

58. The final stage of a foreclosure proceeding was the sale of the property through a public auction at which the current beneficial owner of the right to foreclose is the only lawful party who can provide instructions to the trustee on the amount of money to accept at the sale or to "credit bid" up to the amount owed on the loan. None of the Defendants, or any of their authorized agents, who have played a part in the non-judicial foreclosure proceedings are entitled to receive payment from the loan proceeds, or the Subject Residence. The assertion made in the foreclosure proceedings that the beneficiary named on the trust deed is entitled to foreclose and the notices of default and trustee sale based on amounts not properly owing are acts of fraud or deceit.

59. Defendant US Bank was and is a trustee of a special purpose vehicle, which was probably a special trust formed to securitize the Subject Loan and to whom the trust deed for the subject loan was purportedly assigned in January 2009, on the same day that the Notice of Trustee Sale was recorded.

60. Such assignment was a forgery and fraudulently made as set forth below.

61. US Bank had and has no authority to take action concerning the subject loan without the express written consent of the Certificate Holders, has not obtained such, and has been and is pretending that it does to defraud Plaintiff and the Certificate Holders by foreclosing and providing the funds to persons and/or entities not legally entitled to receive such.

## **FIRST CAUSE OF ACTION**

## **VIOLATION OF THE REAL ESTATE SETTLMENT PROCEDURES ACT**

## **12 U.S.C. § 2605 et seq.**

(Against Defendants Wells and US Bank)

62. Plaintiff re-alleges and incorporates herein by reference, each and every allegation contained above as though set forth in full.

63. The Subject Loan is a mortgage loan subject to the provisions of the Real Estate Settlement Procedures Act set forth at 12 U.S.C. § 2605 et seq.

64. On or about August 4, 2009, Plaintiff sent Defendant Wells the QWR as defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the crediting of payments on her mortgage account and asking for an accounting.

65. In the Qualified Written Request, Plaintiff stated her belief the account in connection with the Subject Loan was not in default regarding the amounts Defendants herein claimed to be owing, and requested that Defendants herein correct the error. Plaintiff further requested that Defendants herein provide her with information and documentation supporting the claim that Plaintiff's account was in default.

66. Defendant Wells did not respond to the QWR.

67. Defendants Wells violated RESPA by, among others, failing to provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); Reg. X § 3500.21(b); and did not properly respond to Plaintiff's Qualified Written Request as set forth in 12 U.S.C. § 2605(e) and Reg. X § 3500.21(e); by failing to provide the information requested by Plaintiff, failing to make corrections to Plaintiff's account, and provide written notification of correction; and, by failing to provide a written explanation of why the servicer, defendant Wells, believes the account in connection with the Subject Loan is correct, along with the name and telephone number of the Wells representative in response to the QWR.

68. Plaintiff is informed and believes, and thereon alleges, that Defendants named herein, have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

69. Defendant Wells violated RESPA 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's Qualified Written Request no later than 20 days after receipt of the request., or an explanation of why the

information sought was unavailable, no later than 60 days after receipt of Plaintiff's Qualified Written Request.

70. Defendant Wells violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make appropriate corrections to the Plaintiff's account in response to the Qualified Written Request, including the crediting of any late charges or penalties, and failing to transmit written notice of such corrections to the Plaintiff no later than 60 days after receipt of the Plaintiff's Qualified Written Request.

71. Defendant Wells violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts and foreclosure proceedings after receiving the Plaintiff's Qualified Written Request by continuing to threaten, and proceeding with, foreclosure.

72. Upon information and belief, Defendant Wells violated RESPA, 12 U.S.C. 2605(e)(3), by providing information to consumer reporting agencies regarding overdue payments allegedly owed by the Plaintiff that were related to her qualified written request.

73. Defendants named herein have engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605 and have and continue to conceal information.

74. As set forth above, Defendants violated numerous federal and state laws. However, until Plaintiff can obtain basic information such as who the current holder of the promissory note is, which information is in the exclusive control of Defendants, she is unable to plead a complete case which even includes all parties who may have in interest in the legal action.

15
Case 2:10-ap-02243-SSC    Doc 1    Filed 12/13/10    Entered 12/13/10 17:52:31    Desc
Main Document    Page 15 of 19

75. Therefore Plaintiff had no choice but to file this complaint for damages and injunctive relief based on RESPA and will file an amended complaint when and if Defendants refrain from concealing necessary information.

76. As a direct and proximate result of Defendant Wells' failure to comply with RESPA, as set forth herein, Plaintiff has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, costs and reasonable attorneys' fees incurred herein.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against Defendants US Bank and Wells Fargo)

77. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78. Defendants have commenced a foreclosure action under the Note and have proceeded with a non-judicial sale. Sale has caused Plaintiff great and irreparable injury in that real property is unique.

79. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to her. Plaintiff will not have the beneficial use and enjoyment of the property and will be evicted from her home.

80. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is

inherently unique and it is and will be impossible for Plaintiff to determine the precise amount of damage she will suffer.

## THIRD CAUSE OF ACTION

### QUIET TITLE

### (Against Defendants US Bank and Wells Fargo)

**AS TO DEFENDANTS US BANK; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO; AND DOES 1 THROUGH 10,000)**

81. Plaintiff has done a title search for the subject property. However Plaintiff believes there are other "off record" persons who have an interest in the subject property as discussed above and which Defendants know of and conceal. Plaintiff cannot file a complete and proper Quiet Title cause of action until Defendants provide that information.

82. Plaintiffs seek to quiet title against the claims of Defendants and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title; and DOES 1 through 10,000.

83. Defendants claims to any interest in the subject property are without any right, and Defendants have no right, title, estate, lien or interest in the Subject Property, and no right to entertain any rights of ownership including the right to foreclosure, offering the Subject Property for sale at a trustee's sale, demanding possession or filing cases for, and acting upon, forcible detainer and eviction.

# FOURTH CAUSE OF ACTION

## ACCOUNTING

### (Against Defendant Wells)

84. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. The amount of money still owed, if any, to defendants or anyone else claiming an interest in the loan is unknown and cannot be determined without an accounting.

WHEREFORE, Plaintiff prays for judgment and order against Defendants, inclusive, as follows:

1. For statutory damages in the amount of $1000 per violation pursuant to 12 U.S.C. §2605(f) and Reg. X 24 C.F.R. §3500.21(f);

2. For attorney's fees and court costs;

3. For a temporary restraining order, preliminary and permanent injunction requiring Defendants to provide the information requested in the QWR and §2943 demand served on them and in particular the information Defendants have about any assignments of the Note and specifically the identity and assignment of the Note to any SPV;

4. For a temporary restraining order, preliminary and permanent injunction requiring Defendants to cease taking any and all action to evict;

5. That the Court order judgment (a) quieting title in Plaintiff's, Rachael Earl, as owner of the Subject Property described in paragraph 1, declaring that Defendant US

LAW OFFICES OF KEVIN JENSEN, PLLC

Bank has no right, title, estate, lien, or interest in the property adverse to Plaintiffs and (b) ordering that Plaintiffs be restored to possession of the Subject Property.

      6.    That the Court order a judgment for an accounting.

      7.    For leave to amend this complaint after the information requested is provided;

      8.    For such other and further relief as the court deems just and proper.

DATED this 13th day of December, 2010

**LAW OFFICES OF KEVIN JENSEN, PLLC**

By: ___/s/ Kevin Jensen_____
        Kevin Jensen
        Attorney for Debtor

**ORIGINAL** of the foregoing filed
Filed this 13th day of December, 2010, with:

**U.S. BANKRUPTCY COURT
DISTRICT OF ARIZONA**
230 North First Avenue, Suite 101
Phoenix, Arizona 85003-1727

Russell Brown
3838 N. Central Ave., Suite 800
Phoenix, Arizona 85012
Chapter 13 Trustee

United States Trustee
230 N. 1st Ave., Ste. 204
Phoenix, Arizona 85003

All Creditors listed on the Mailing Matrix

By____/s/ Karen Gruninger_____