Steven D. Jerome (#018420)
Gregory J. Marshall (#019886)
Andrew Hardenbrook (#025518)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Email: sjerome@swlaw.com
gmarshall@swlaw.com
ahardenbrook@swlaw.com
Attorneys for Defendants U.S. Bank National
Association, as Trustee for GSAA 2007-9,
and Wells Fargo Bank, N.A.

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In Re:<br><br>RACHAEL EARL,<br><br>Debtor. | Proceedings Under Chapter 13<br><br>Case No. 2:10-bk-27333-SSC<br><br>Adversary No. 2:10-ap-02243-SSC |
| RACHAEL EARL, an individual<br><br>Plaintiff,<br><br>v.<br><br>US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR GSAA 2007-9 BY ITS ATTORNEY IN FACT WELLS FARGO BANK N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE INC.; DOES 1-10,000<br><br>Defendants. | **MOTION TO DISMISS** |

Pursuant to Fed.R.Civ.P. 12(b)(6), made applicable through Fed.R.Bank.P. 7012, Defendants U.S. Bank National Association, as Trustee for GSAA 2007 ("US Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo") hereby move to dismiss with prejudice the Complaint (as

12493729

defined below) filed by Plaintiff Rachael Earl ("Plaintiff") for failure to state claims for which relief may be granted.

This Motion is supported by the attached Memorandum of Points and Authorities and all pleadings and papers of record, all of which are incorporated herein by this reference.

DATED this 28th day of January, 2011.

SNELL & WILMER L.L.P.

By: /s AVH (025518)
Steven D. Jerome
Gregory J. Marshall
Andrew Hardenbrook
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for Defendants U.S. Bank National Association, as Trustee for GSAA 2007-9 and Wells Fargo Bank, N.A.

12493729

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

This action arises from the January 14, 2010 lawful foreclosure of the residential property securing Plaintiff's loan and a subsequent eviction proceeding following foreclosure. Plaintiff did not seek, or obtain, an injunction prohibiting the sale before it took place. As such, her claims to title and possession are barred as a matter of law by A.R.S. §§ 33-811(C) and (E). Likewise, Plaintiff's efforts to circumvent, and collaterally attack, a final state court judgment finding that she has no right to possession or occupancy of the property are barred by the doctrine of collateral estoppel.

As is set forth in more detail in the procedural history below, Plaintiff has engaged in an onslaught of litigation and bankruptcy filings asserting legally and factually unsupported claims and false statements to this Court.[1] For example, Plaintiff asserts that "[a]t its core, this case is about predatory lending practices, which have caused Plaintiff to lose all of the equity in her home, have forced her into bankruptcy, and caused a financial crisis of historic proportions." [Adv. Dkt. # 1 ¶ 3] Plaintiff also contends that Defendants are "phony lenders and mortgage brokers" [*id.* ¶ 6] who "have violated a panoply of state and federal lending laws and consumer protection and fair debt reporting laws. . . . [and] committed fraudulent and deceptive acts, against an unsuspecting citizen." [*Id.* ¶ 4]

Plaintiff makes no effort to support her inflammatory contentions with competent factual allegations. Moreover, a reasonable investigation by Plaintiff would have revealed that many of the claims are either time or statutorily-barred.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

**A.    The Note and Deed of Trust at Issue**

1.    On or about April 12, 2007, Plaintiff executed that certain "Note" dated as of April 12, 2007, pursuant to which, among other things: (i) Freedom Home Mortgage Corporation, as

---

[1] See Section II, ¶¶ 15 and 29, *infra*, with respect to Plaintiff's false statements.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1. lender (the "Lender"), agreed to loan Plaintiff the original principal amount of $500,000 (the "Loan"); and (ii) Plaintiff agreed to make monthly payments of principal and interest under the terms of the Note. A true and correct copy of the Note is attached hereto as **Exhibit "A"** and incorporated herein by reference.

2. The Note was secured by, among other things, by that certain "Deed of Trust" dated as of April 12, 2007. Pursuant to the Deed of Trust, Plaintiff granted Lender a security interest in, among other things, certain real property owned by Plaintiff and located in Maricopa County, Arizona, as more particularly described therein (the "Property").[2] A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "B"** and incorporated herein by reference.

3. Lender perfected its interest in the Property by, among other things, recording the Deed of Trust in the Maricopa County Recorder's Office on April 17, 2007 as Sequence Number 2007-0446763. *See* Exhibit B hereto.

**B.  The January 14, 2010 Trustee's Sale of the Property**

4. Pursuant to that certain "Corporation Assignment of Deed of Trust" dated as of January 15, 2009 (the "Deed of Trust Assignment"), MERS, as beneficiary, granted, assigned and transferred to US Bank all beneficial interest in the Deed of Trust. US Bank perfected its interest in the Property by, among other things, recording the Deed of Trust Assignment in the Maricopa County Recorder's Office on January 16, 2009 as Sequence Number 2009-0041298. A true and correct copy of the Deed of Trust Assignment is attached hereto as **Exhibit "C"** and incorporated herein by reference.

5. Pursuant to that certain "Substitution of Trustee," recorded in the Maricopa County Recorder's Office on January 16, 2009 as Sequence Number 2009-0041299, US Bank appointed Michael A. Bosco as successor trustee (the "Successor Trustee"). A true and correct

---

[2] Pursuant to the Deed of Trust, MERS is named as beneficiary and acted solely as nominee for Lender and Lender's successors and assigns.

12493729

4

Case 2:10-ap-02243-SSC   Doc 5   Filed 01/28/11   Entered 01/28/11 15:14:29   Desc
Main Document    Page 4 of 17

copy of the Substitution of Trustee is attached hereto as **Exhibit "D"** and incorporated herein by reference.

6. On January 16, 2009, the Successor Trustee recorded that certain "Notice of Trustee's Sale," wherein the Successor Trustee gave notice that a public auction of the Property was scheduled to take place on April 17, 2009 (the "Trustee's Sale"). A true and correct copy of the Notice of Trustee's Sale is attached hereto as **Exhibit "E"** and incorporated herein by reference.

7. Pursuant to that certain "Trustee's Deed Upon Sale" recorded in the Maricopa County Recorder's Office on January 15, 2010 as Sequence Number 2010-0035162 (the "Trustee's Deed"), the Successor Trustee sold the Property to US Bank on January 14, 2010 as high bidder at a public auction. A true and correct copy of the Trustee's Deed is attached hereto as **Exhibit "F"** and incorporated herein by reference.

8. Plaintiff made no effort to obtain an order from any court enjoining the Trustee's Sale before it took place on January 14, 2010 as required by A.R.S. §33-811(C).

C. **Plaintiff's Post-Sale Efforts to Collaterally Attack the Propriety of the January 14, 2010 Trustee's Sale and Avoid Eviction from the Property**

9. On or about February 7, 2010, US Bank initiated a forcible entry and detainer action against Plaintiff in the Superior Court of Arizona, Maricopa County, commencing Case No. CV2010-006146 (the "FED Action"), and moved for judgment on the pleadings on or about March 8, 2010. A true and correct copy of the complaint, motion for judgment on the pleadings, and docket of the FED Action are attached hereto as **Exhibits "G", "H" and "I"**, respectively, and incorporated herein by reference.

10. On or about February 19, 2010, Plaintiff **filed a complaint** against Freedom Home Mortgage Corporation, Mark S. Bosco, Michael A. Bosco, Mortgage Electronic Registration Systems, Inc., Arizona Title Agency, Inc., Wells Fargo, John Doe and Jane Doe in the Superior Court of Arizona, Maricopa County, commencing Case No. CV2010-090616 ("Plaintiff's State

12493729

5

Court Action"). In the State Court Action, Plaintiff alleged, among other things, that her due process rights had somehow been violated in connection with the Deed of Trust and requested, among other things, injunctive relief to vacate the Trustee's Sale. A true and correct copy of the State Court Complaint is attached hereto as **Exhibit "J"** and incorporated herein by reference.

11. On March 25, 2010, Plaintiff's State Court Action was removed to the United Stated District Court for the District of Arizona, Case No. CV-10-00678-PHX-ROS, and Defendants Mark S. Bosco, Michael A. Bosco, Wells Fargo, and Freedom Home Mortgage Corporation filed motions to dismiss the State Court Action (the "Motions to Dismiss").

12. On or about May 18, 2010, the Federal District Court granted the Motions to Dismiss, but gave Plaintiff leave to file an amended complaint by a date certain. A true and correct copy of the order granting the Motion to Dismiss the State Court Action is attached hereto as **Exhibit "K"** and incorporated herein by reference.

13. On or about July 12, 2010, Plaintiff filed a motion to voluntarily dismiss the State Court Action, which the Court subsequently granted on August 10, 2010. True and correct copies of Plaintiff's Motions to Dismiss the State Court Action as well as the order and judgment granting the same are attached hereto as **Exhibits "L", "M" and "N"**, respectively, and incorporated herein by reference.

14. In the meantime, Plaintiff had also **filed bankruptcy proceedings**. On March 4, 2010, Plaintiff filed her initial voluntary petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code, commencing Case No. 2:10-bk-05650-RJH (the "First Bankruptcy Proceeding").

15. On March 18, 2010, Plaintiff filed her schedules of assets and liabilities (the "First Schedules") in her First Bankruptcy Proceeding. [First Bk. Dkt. # 15] Despite the fact that US Bank has held legal title to the Property since January 14, 2010, Plaintiff's First Schedules identify Plaintiff as the *owner* of the Property *free and clear of any security interests*. [Schedule A, First Bk. Dkt. # 15] Even though she had filed a complaint against Wells Fargo and others on

February 19, 2010, Plaintiff did not identify any potential claim against Wells Fargo, US Bank, or any other entity. [Schedule B, First Bk. Dkt. # 15]

16. On March 29, 2010, US Bank filed a motion to terminate the automatic stay in Plaintiff's First Bankruptcy Proceeding to permit US Bank to proceed with the FED Action ("US Bank's First Motion to Lift Stay"). [First Bk. Dkt. # 19]

17. Plaintiff filed her response to the First Motion to Lift Stay on or about April 14, 2010, which she subsequently amended on May 3, 2010, arguing, among other things, that US Bank was not the real party in interest and lacked standing. [First Bk. Dkt. # 22, 29]

18. A hearing on US Bank's First Motion to Lift Stay was held on May 12, 2010 before the Honorable Judge Randolph J. Haines at which Plaintiff appeared and opposed the First Motion to Lift Stay. [First Bk. Dkt. # 32]

19. At the May 12 hearing, Judge Haines granted US Bank's First Motion to Lift Stay and subsequently entered an order granting the First Motion to Lift Stay on May 18, 2010 ("Order Granting First Motion to Lift Stay", First Bk. Dkt. # 37). A true and correct copy of the Order Granting First Motion to Lift Stay is attached hereto as **Exhibit "O"** and incorporated herein by reference.

20. On May 19, 2010, Plaintiff filed an emergency motion to reinstate the automatic stay or, in the alternative, grant a temporary retraining order (the "Emergency Motion") on the grounds that, among other things, US Bank was not a holder in due course. [First Bk. Dkt. # 38]

21. On May 24, 2010, the First Bankruptcy Court denied Plaintiff's Emergency Motion. [First Bk. Dkt. # 41] A true and correct copy of the order denying the Emergency Motion is attached hereto as **Exhibit "P"** and incorporated herein by reference.

22. After obtaining relief from the automatic stay, US Bank proceeded with the FED Action, and, on August 19, 2010, the State Court held a trial in the FED Action (the "FED Trial"). A true and correct copy of the minute entry dated August 19, 2010 and signed by the Court is attached hereto as **Exhibit "Q"** and incorporated herein by reference.

23. At the FED Trial, Plaintiff was represented by her current bankruptcy counsel, Kevin Jensen, and Michael Pines, admitted *pro hac vice* for the FED Trial.

24. Pursuant to the August 19 minute entry, Plaintiff filed an opposition to the US Bank's motion for judgment on the pleading at the FED Trial and opposed the FED Action, in part, on the grounds that US Bank lacked standing to bring the FED Action based on alleged defects in the Trustee's Sale and Deed of Trust. A true and correct copy of Plaintiff's opposition to US Bank's motion for judgment on the pleadings is attached hereto as **Exhibit "R"** and incorporated herein by reference.

25. At the conclusion of the FED Trial, the State Court found Plaintiff guilty of forcible detainer and granted judgment in the FED Action against Plaintiff and in favor of US Bank.[3]

26. On or about August 25, 2010, Plaintiff filed a motion to dismiss her First Bankruptcy Proceeding, which the First Bankruptcy Court granted on August 26, 2010. [First Bk. Dkt. # 58, 59]

27. On August 27, 2010, before a writ of restitution had been executed, Plaintiff filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code (the "Petition Date"), commencing Case No. 2:10-bk-27333-SSC (the "Second Bankruptcy Proceeding"). The Second Bankruptcy Proceeding was later converted to a proceeding under Chapter 13 of the Bankruptcy Code. [Second Bk. Dkt. # 6]

28. On or about September 8, 2010, US Bank filed a motion to lift the automatic stay to permit US Bank to proceed with the FED Action (the "US Bank's Second Motion to Lift Stay", Second Bk. Dkt. # 9).

29. On October 4, 2010, Plaintiff filed her schedules of assets and liabilities (the "Second Schedules", Second Bk. Dkt. # 13) in her Second Bankruptcy Proceeding. Despite the

---

[3] The State Court subsequently amended the August 19, 2010 judgment to correct a clerical mistake. A true and correct copy of the Amended Order is attached hereto as **Exhibit "S"** and incorporated herein by reference.

fact that US Bank has held legal title to the Property since January 14, 2010, Plaintiff's Second Schedules identify Plaintiff as the *owner* of the Property *free and clear of any security interests*. [*See* Schedule A, Second Bk. Dkt. # 13] Plaintiff did not identify any potential claim against Wells Fargo, US Bank, or any other entity. [*See* Schedule B, Second Bk. Dkt. # 13]

30. On or about December 13, 2010, Plaintiff initiated the present adversary proceeding against US Bank and Wells Fargo.

31. On or about January 14, 2011, Plaintiff filed her response to the Second Motion to Lift Stay arguing, among other things, that the stay should be continued through the duration of this adversary proceeding. [Second Bk. Dkt. # 45]

## II. ARGUMENT

### A. Plaintiff's Claims

Plaintiff's Complaint asserts claims for 1) alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*, pertaining to Qualified Written Requests for information ("QWR") (First Cause of Action); 2) Injunctive Relief (Second Cause of Action), which is a remedy; not a claim, prohibiting Defendants from "taking any and all action to evict" her and compelling Defendants "to provide the information requested in the QWR and § 2943." [See Adv. Dkt. # 1, p. 18 (Wherefore ¶ 4)]; 3) Quiet Title (Third Cause of Action) with respect to the Property that was sold on January 14, 2010 at a duly noticed Trustee's Sale; and 4) an accounting for "money still owed" to Defendants "or anyone else claiming an interest in the loan" [Adv. Dkt. # 1 ¶ 85] (Fourth Cause of Action) even though no deficiency claim has been filed or asserted against Plaintiff by these Defendants or "anyone else."

Finally, although Plaintiff alleges that she "intends to allege violations of . . . TILA" after she receives "information required to be provided to her" [Adv. Dkt. # 1 ¶ 24], the Complaint appears to assert such claimed TILA violations. For example, Plaintiff contends that "Defendants violated TILA during the closing phase of the Subject Loan [because] they failed to provide Plaintiff with the necessary TILA disclosures prior to the closing of the loan." [*Id.* ¶ 21]

### B. Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A plaintiff is obligated to provide factual allegations that "raise the right to relief above the speculative level." *Id.* at 555. A Court should only accept as true the plaintiff's well-pled factual contentions, not conclusory allegations. Stated another way, the pleading standard, "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). The court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). As is demonstrated below, Plaintiff's pleading deficiencies alone require dismissal of her Complaint.

### C. Plaintiff's RESPA Claim Should be Dismissed

Plaintiff alleges that she sent a QWR to Wells Fargo on August 4, 2009. [Adv. Dkt. # 1 ¶ 11] A QWR must be: 1) written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that 2) includes, or otherwise enables the servicer to identify, the name and account of the borrower, and 3) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower as may be required by statute. 12 U.S.C. §2605(e)(1)(B) Plaintiff fails to attach a copy of the alleged QWR to the Complaint, although she states that it is attached to her Complaint as Exhibit B. [*Id.* ¶ 48] The Complaint filed with the Court contains no such exhibit. Plaintiff's conclusory allegation that her "request" was, in fact, a QWR as defined by 12 U.S.C. § 2605(e)(1)(B) is not sufficient. This pleading deficiency alone requires dismissal of the claim. *Breedlove v. Wells Fargo*, No. CV-09-8135, 2010 U.S. Dist. Lexis 77021, *8-10 (D. Ariz. July 28, 2010) (stating that determining

12493729

10

whether a request is, in fact, a QWR as defined by statute, is a threshold issue and granting motion to dismiss RESPA claim because "[w]ithout a sufficient factual basis, Plaintiffs' claim cannot survive dismissal under the *Twombly* pleading standard.")

In addition, to state a claim, a borrower must allege actual damages **as a result of the servicer's failure to comply** with 12 U.S.C. § 2605(e). *See* 12 U.S.C. § 2605(f)(1)(A) (providing a remedy for "actual damages to the borrower *as a result of the [servicer's] failure*") (Emphasis added); *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (dismissing complaint because plaintiff offers only conclusory statement that "damages consist of the loss of plaintiff's home together with his attorney fees."); *Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170 at *3 (N.D. Tex. 2006); *Hepler v. Washington Mut. Bank, F.A.*, 2009 WL 1045470 at *4-5 (C.D. Cal. 2009); *Spencer v. Hutchens,* 471 F. Supp. 2d 548, 554 (M.D.N.C. 2006).

Plaintiff alleges that she "requested documentation reflecting the identity of the true owner and holder of the Note and mortgage" and information "regarding the crediting of payments on her mortgage account" and an accounting. [Adv. Dkt. # 1 ¶¶ 12, 48, 64] She allegedly "stated her belief the [loan] was not in default [in the amounts claimed by Defendants] and "requested that they correct the error." [*Id.* ¶ 65] Plaintiff alleges that "[a]s a direct and proximate result of Defendant Wells' failure to comply with RESPA, as set forth herein, Plaintiff has suffered and continues to suffer damages and costs of suit." [*Id.* ¶ 76] Plaintiff fails to allege **how** she was damaged by Wells Fargo's alleged failures or how those failures proximately caused her harm. At best, Plaintiff alleges that she disputed that she was in default on her loan obligations and was seeking additional information from Wells Fargo as to that issue. She fails to allege why Wells Fargo's alleged failure to respond prevented her from seeking relief from a court to enjoin the January 14, 2010 trustee's sale on the grounds that she was not in default. Having failed to state a claim, Plaintiff's First Cause of Action should be dismissed.

12493729

11

### D. <u>Plaintiff's Quiet Title Claim is Barred by A.R.S. §§ 33-811(C) & (E)</u>

Plaintiff's Complaint seeks to "quiet title against the claims of Defendants and all persons unknown, claiming any legal or equitable title, estate, lien or interest in the [Property]." [Adv. Dkt. # 1 ¶ 82] Plaintiff contends that "Defendants [*sic*] claims to any interest in the subject property are without any right, and Defendants have no right, title, estate, lien or interest in the Subject Property . . . ." [*Id.* ¶ 83] She provides no direct factual support for her allegation. Plaintiff may be intending to rely on conclusory allegations in paragraphs 45-47 and 53 of the Complaint that 1) she did not receive a notice of default, 2) the amount of default claimed was incorrect, and 3) the loan was paid in full by so-called "credit enhancements." *See also* paragraph 53 ("Defendants unlawfully initiated non-judicial foreclosure proceedings against Plaintiff, and never recorded or delivered a Notice of Default, and have improperly claimed amounts not owing.") Plaintiff may also be intending to rely on her conclusory allegations that "Defendants were not in possession of the Note and they were neither holders of the Note or non-holders of the Note entitled to payment, and therefore they have foreclosed without rights under the law" or that recorded Deed of Trust Assignment "was a forgery and fraudulently made . . . ." [Adv. Dkt, # 1 ¶¶ 57-60]

Whatever the factual basis of her quiet title claim, it is barred as a matter of law by A.R.S. §33-811(C) because Plaintiff failed to obtain an order pursuant to Ariz. R. Civ. P. 65 *before* the January 14, 2010 Trustee's Sale took place. A.R.S. § 33-811(C) provides: "The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to section 33-809 *shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona Rules of Civil Procedure*, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale. A copy of the order, the application for the order and the complaint shall be delivered to the trustee within twenty-four hours after entering the order." (Emphasis added). Moreover, under Arizona law, the issuance of a trustee's deed to purchasers

12

12493729

of trust property at sale is conclusive evidence that statutory requirements for sale were satisfied. *See Triano v. First American Title Ins. Co. of Arizona*, 131 Ariz. 581, 643 P.2d 26 (App. 1982); *see also* A.R.S. § 33-811(E) ("The trustee's deed shall operate to convey to the purchaser the title, interest and claim of the trustee, the trustor, the beneficiary, their respective successors in interest and all persons claiming the trust property sold by or through them, including all interest or claim in the trust property acquired subsequent to the recording of the deed of trust and prior to delivery of the trustee's deed."). Thus, as a matter of law, Plaintiff has no right or standing to pursue a quiet title claim, and the claim should be dismissed with prejudice.

### E. Plaintiff's Accounting Claim Lacks a Predicate Supporting Claim and is an Improper Request for an Advisory Opinion

Plaintiff seeks an "accounting" for "[t]he amount of money still owed, if any, to defendants or anyone else claiming an interest in the loan." [Adv. Dkt. # 1 ¶ 85] As an initial matter, "[a] right to an accounting is derivative; it must be based on other claims." *County of Santa Clara v. Astra U.S., Inc*., 428 F. Supp. 2d 1029, 1037 (N.D. Cal. 2006) (quoting *Janis v. Cal State Lottery Comm'n*, 68 Cal. App. 4th 824, 833, 80 Cal. Rptr. 2d 549 (1998)). Because, for the reasons argued above, Plaintiff has failed to state claims for which relief may be granted, there is no predicate to support Plaintiff's claim for an accounting.

Moreover, Plaintiff does not allege that Defendants have demanded payment for "money still owed" nor does she allege that any third party has done so. As a consequence, Plaintiff's claim fails to allege a case or controversy and seeks an improper advisory opinion from this Court, requiring its dismissal.

### F. Plaintiff's TILA Claim Fails As a Matter of Law

#### 1. Plaintiff's Conclusory Allegations Are Insufficient to State a Claim

Plaintiff alleges that "Defendants violated TILA during the closing phase of the Subject Loan. Specifically, they failed to provide Plaintiff with the necessary TILA disclosures prior to the closing date of the loan." [Adv. Dkt. # 1 ¶ 21] The conclusory allegations do not state any

12493729

13

Case 2:10-ap-02243-SSC    Doc 5    Filed 01/28/11    Entered 01/28/11 15:14:29    Desc
Main Document    Page 13 of 17

underlying facts supporting the claim. The allegations fail to identify which disclosures allegedly were not provided. Allegations of a general lack of compliance are insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555. Plaintiff's other TILA-based allegations are similarly vague and conclusory.

2. <u>Plaintiff's Claims are Statutorily Barred</u>

All actions for damages under TILA must be commenced within one year after the occurrence of the alleged violation. *See* 15 U.S.C. § 1640(e); *In re Vincent*, 381 B.R. 564, 571 (Bankr. D. Mass. Jan. 18, 2008); *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003). All purported disclosure violations under TILA occur, as a matter of law, at the time the contract is consummated. *See Bartholomew v. Northampton Nat. Bank of Easton*, 584 F.2d 1288, 1296 (3rd Cir. 1978); *Betancourt v. Countrywide Home Loans, Inc.*, 344 F.Supp. 2d 1253, 1257-1258 (D. Colo. 2004); *see also Stevens v. Rock Springs Nat'l Bank*, 497 F.2d 307, 309 (10th Cir. 1974). Plaintiff concedes that "[t]he compliance requirements of TILA are triggered at the time the loan application is made." [Adv. Dkt. # 1 ¶ 42] Here, by Plaintiff's admission, the loan originated in April 2007, nearly *four years before* Plaintiff filed this Complaint. [Adv. Dkt. # 1 ¶ 51] Accordingly, any claim that the Loan violated TILA expired long before Plaintiff filed this action.[4]

While Plaintiff's claim appears to be limited to damages, to the extent she claims a right to rescind the transaction under TILA that claim fails as a matter of law as well. First, any rescission right Plaintiff may have had pursuant to 15 U.S.C. § 1635 terminated, at the latest, upon the sale of the Property at the Trustee's Sale on January 14, 2010 and cannot be asserted in this subsequent action, filed in December 2010. 15 U.S.C. § 1635(f). Second, Plaintiff's rescission claim is barred for failure to allege any offer of tender of loan proceeds to the lender. *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003); *Logan v. Resmae Mortgage*

---

[4] Plaintiff did not allege TILA violations in her February 19, 2010 State Court Complaint. See Exhibit J hereto. Even if she had, the claim would have been time barred as of the date of that filing.

12493729

14

*Corp.*, No. 2:09-CV-01632-MCE-GGH, 2009 WL 5206716, at *3 (E.D. Cal. Dec. 24, 2009). A party may not on the one hand rescind a transaction and, on the other, retain the benefits of that transaction. Accordingly, to the extent Plaintiff purports to seek relief for alleged violation of TILA, the claims should be dismissed with prejudice.

### G. **Plaintiff is Not Entitled to Injunctive Relief**

Plaintiff alleges that the non-judicial foreclosure of the Property caused her "great and irreparable injury" because she "will not have the beneficial use and enjoyment of the property and will be evicted from her home." [Adv. Dkt. # 1 ¶¶ 78-79] She thus requests injunctive relief requiring Defendants to "cease taking any and all actions to evict [her]." [Adv. Dkt. # 1 Wherefore ¶ 4] Plaintiff also requests injunctive relief requiring Defendants provide the information requested by her QWR. [*Id.* ¶ 3] Neither of those "claims" is warranted.

#### 1. Injunctive Relief Is a Remedy; Not a Claim

"Injunctions and declaratory judgments are remedies for underlying causes of action, but they are not separate causes of action as Plaintiff alleges." *Silvas v. GMAC Mortg. LLC,* No. CV-09-265-PHX-GMS, 2009 WL 4573234 at * 6 (D. Ariz. Dec. 1, 2009) (citations omitted). Moreover, as discussed in this Motion to Dismiss, Plaintiff fails to state any claims upon which relief can be granted and thus cannot meet the requirements of Fed. R. Civ. P. 65, which includes, among other elements, proof of likelihood of success on the merits. *Winter v. NRDC*, 129 S. Ct. 365, 374 (2008); *Am. Trucking Ass'n v. City of L.A.*, 559 F.3d 1046, 1053-59 (9th Cir. 2009).

#### 2. Plaintiff's Claimed Right to Possession and Occupancy of the Property Has Been Judicially Determined and Cannot Be Collaterally Attacked in this Proceeding

Plaintiff's claimed right to possession and occupancy of the Property was litigated and finally adjudicated against her after US Bank obtained an order from the First Bankruptcy Court lifting the stay. [First Bk Dkt. # 37] Following stay relief and a trial on the merits, the Court in the FED Action entered a final appealable order against Plaintiff on August 19, 2010. Although

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

subsequently modified in part, the substantive ruling against Plaintiff did not change. Plaintiff did not timely appeal the final judgment. A.R.S. § 12-1182(A). Thus, Plaintiff is collaterally estopped from re-litigating that issue here. "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued." *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001) (discussing collateral estoppel in the context of non-dischargeability complaint). The elements of collateral estoppel under Arizona law are the following: (1) resolution of the issue to be precluded was essential to the previous decision; (2) the issue was actually litigated in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue; (4) there was a valid and final decision on the merits; and (5) there is common identity of the parties. *Irby Const. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 105, 107, 907 P.2d 74, 76 (App. 1995). As is demonstrated by the procedural history set forth in Section II *supra* and attached exhibits, all the requirements of collateral estoppel have been satisfied. Thus, Plaintiff is barred from re-litigating her claimed right to possession or occupancy of the Property.

On its face, the August 19 minute entry granting judgment against Plaintiff and in favor of US Bank is a formal written judgment signed by the State Court and entered by the clerk on August 19, 2010. This Court lacks authority to overrule the State Court judgment under the *Rooker-Feldman* doctrine. *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613-14 (9th Cir. 2007) ("The *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments."). Plaintiff filed her Second Bankruptcy before execution of the writ was accomplished. *See supra* Section II(C). Accordingly, Wells Fargo filed its Second Motion for Stay Relief, which currently is pending before this Court. The sole issue before the Court is whether the stay should be lifted to allow execution of the writ.

### 3. There is No Statutory or Legal Basis for Injunctive Relief to Compel Response to a QWR

Plaintiff purports to assert a claim pursuant to 12 U.S.C. §2605(f) which provides a remedy for **actual damages** and, in appropriate circumstances not alleged here, statutory damages. There is no provision for injunctive relief. *See Allen*, 660 F. Supp. 2d at 1097 (stating that while plaintiff appeared to be seeking equitable relief, the court was "not satisfied that RESPA allows any other kind of relief" besides damages). Accordingly, even if Plaintiff had stated a claim under 12 U.S.C. §2605, which she has not, she would not be entitled to injunctive relief as requested by the Complaint.

## III. CONCLUSION.

Based on the foregoing, Defendant's Motion to Dismiss should be granted in its entirety.

Dated this 28th day of January, 2011.

SNELL & WILMER L.L.P.

By: /s/ AVH (025518)
Steven D. Jerome
Gregory J. Marshall
Andrew V. Hardenbrook
Attorneys for Defendants U.S. Bank National Association, as Trustee for GSAA 2007-9, and Wells Fargo Bank, N.A.

COPY of the foregoing served by electronic notification or U.S. Mail on January 28, 2011, to:

Kevin Lee Jensen
Law Offices of Kevin Lee Jensen PLLC
3740 E. Southern Avenue, Suite 210
Mesa, AZ 85206
Email: Kevin@jensenlawaz.com

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003
Email: ustpregion14.px.ecf@usdoj.gov

/s/

12493729

17

Case 2:10-ap-02243-SSC  Doc 5  Filed 01/28/11  Entered 01/28/11 15:14:29  Desc
Main Document  Page 17 of 17