# EXHIBIT A


TRUE ... D TO BE A
OF THE ORIGINAL .... COPY
ARIZONA TITLE AGENCY, INC.
BY:

MIN: 100073020061832562     NOTE     Loan Number: 10131070298123

APRIL 12, 2007          MT. LAUREL          NEW JERSEY
[Date]                 [City]               [State]

1311 SOUTH CLAIRBORN AVENUE, GILBERT, ARIZONA 85296
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 500,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FREEDOM HOME MORTGAGE CORPORATION (FN)
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on JUNE 1 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO BOX 8068, VIRGINA BEACH, VIRGINIA 23450
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 3,242.99

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Case 2:10-ap-02243-SSC    Doc 5-1    Filed 01/28/11    Entered 01/28/11 15:14:29    Desc
Exhibit EXHIBITS A - J    Page 2 of 113

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be       5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Case 2:10-ap-02243-SSC   Doc 5-1   Filed 01/28/11   Entered 01/28/11 15:14:29   Desc
Exhibit EXHIBITS A - J   Page 3 of 113

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_Rachael A. Earl_ _____ (Seal)          _____ (Seal)
RACHAEL A. EARL           -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
              -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
              -Borrower                                -Borrower


[Sign Original Only]

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                    Page 3 of 3

DocMagic eFfffffff 800-849-1362
www.docmagic.com

# EXHIBIT B

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20070446763  04/17/2007  02:08
ELECTRONIC RECORDING

7002028-17-1-1--
Hensleye

**ARIZONA TITLE AGENCY, INC.**

Recording Requested By:
FREEDOM HOME MORTGAGE
CORPORATION (FN)

And After Recording Return To:
FREEDOM HOME MORTGAGE COPORATION (FN)
907 PLEASANT VALLEY AVENUE
MT. LAUREL, NEW JERSEY 08054
Loan Number: 10131070298123

1/1  07002028·048
[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN: 100073020061832562

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  APRIL 12, 2007      , together with all Riders to this document.
(B)  "Borrower" is  RACHAEL A. EARL, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument. Borrower's mailing address is  1311 S. CLAIBORNE AVE., GILBERT, ARIZONA 85296
(C)  "Lender" is  FREEDOM HOME MORTGAGE COPORATION (FN)

Lender is a  NEW JERSEY CORPORATION                          organized
and existing under the laws of  NEW JERSEY
Lender's mailing address is  907 PLEASANT VALLEY AVENUE, MT. LAUREL, NEW JERSEY 08054

(D)  "Trustee" is  ARIZONA TITLE AGENCY, INC.

Trustee's mailing address is  4041 N. CENTRAL AVENUE #D-100, PHOENIX, ARIZONA 85012

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

---

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)                Page 1 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

(F)   "Note" means the promissory note signed by Borrower and dated   APRIL 12, 2007
The Note states that Borrower owes Lender   FIVE HUNDRED THOUSAND AND 00/100
                              Dollars (U.S. $  500,000.00            ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
MAY 1, 2037
(G)   "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☒ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of

the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| COUNTY | of | MARICOPA | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

CLAIBORNE ~~PAC~~

which currently has the address of    1311 SOUTH ~~CLAIBORN~~ AVENUE
                                                                                    [Street]

GILBERT                          , Arizona              85296      ("Property Address"):
[City]                                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)                Page 3 of 14                DocMagic 800-649-1362
www.docmagic.com

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)          Page 4 of 14

*DocMagic* 800-649-1362
www.docmagic.com

Case 2:10-ap-02243-SSC   Doc 5-1   Filed 01/28/11   Entered 01/28/11 15:14:29   Desc
Exhibit EXHIBITS A - J   Page 9 of 113

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)       Page 5 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)                    Page 6 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)          Page 7 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Case 2:10-ap-02243-SSC   Doc 5-1   Filed 01/28/11   Entered 01/28/11 15:14:29   Desc
Exhibit EXHIBITS A - J   Page 12 of 113

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)                    Page 8 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)         Page 9 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)                         Page 10 of 14

*DocMagic* 800-649-1362
www.docmagic.com

Case 2:10-ap-02243-SSC    Doc 5-1    Filed 01/28/11    Entered 01/28/11 15:14:29    Desc
Exhibit EXHIBITS A - J    Page 15 of 113

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)          Page 11 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

Case 2:10-ap-02243-SSC   Doc 5-1   Filed 01/28/11   Entered 01/28/11 15:14:29   Desc
Exhibit EXHIBITS A - J   Page 16 of 113

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)      Page 12 of 14      DocMagic *eFormis* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

*Rachael A. Earl* _____ (Seal)
RACHAEL A. EARL                -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

Witness:                          Witness:

_____        _____

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)          Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

——————————— [Space Below This Line For Acknowledgment] ———————————

State of Arizona

County of __MARICOPA__

　　The foregoing instrument was acknowledged before me this _April 12, 2007_

by __RACHAEL A. EARL__

_(signature)_
Signature of Person Taking Acknowledgment

_Escrow Manager_
Title

**AIMEE DUKE**
Notary Public - Arizona
Pinal County
Expires 01/29/10

(Seal)

Serial Number, if any

My commission expires: _Jan 29 2010_

ARIZONA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3003 1/01 (rev. 6/02) (02/01/07)　　　　Page 14 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Escrow No. 07002028-048

## Exhibit "A"

LOT 196, AGRITOPIA, PHASE 2A, ACCORDING TO BOOK 691 OF MAPS, PAGE 4 AND AFFIDAVIT OF CORRECTION RECORDED AS 2004-1145385, RECORDS OF MARICOPA COUNTY, ARIZONA.

PLAINLTR

Loan Number: 10131070298123

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     12th       day of APRIL, 2007             , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   FREEDOM HOME MORTGAGE CORPORATION (FN)
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1311 SOUTH CLAIRBORN AVENUE, GILBERT, ARIZONA 85296
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

AGRITOPIA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations.   Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents.  The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance.  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:  (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

---

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                                Page 1 of 3

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

# EXHIBIT C

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20090041298  01/16/2009  04:11
ELECTRONIC RECORDING

2900234-1-3-1--
Esquivela

**RECORDING REQUESTED BY:**

**WHEN RECORDED MAIL TO:**
Wells Fargo Home Mortgage Inc
Attn: F/C Dept.
3476 Stateview Boulevard
Fort Mill SC 29715

**T&B NO.:** 09-40173
**LOAN NO.:** 0159737428

**APN:** 313-10-317

# CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to **U.S. Bank National Association, as Trustee for GSAA 2007-9** by its **Attorney in fact Wells Fargo Bank, N.A.,** successor by merger to Wells Fargo Home Mortgage Inc. all beneficial interest under that certain Deed of Trust dated **04/12/2007** executed by **Rachael A. Earl, a married woman as her sole and separate property** Trustor, to **Arizona Title Agency, Inc.** Trustee, and recorded on **04/17/2007** as Instrument No. **2007-0446763** on in Book Page of Official Records of **Maricopa** County, **AZ** describing the land therein:

**AS PER DEED OF TRUST MENTIONED ABOVE.**

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust

January 15, 2009          Effective Date: 12/08/2008

**Mortgage Electronic Registration Systems, Inc.**

By : Jennifer Hamlin
It's: Assistant Secretary for MERS, Inc.

STATE OF ARIZONA
COUNTY OF MARICOPA

On January 15, 2009, before me, Ann Armstrong, a Notary Public for said State, personally appeared Jennifer Hamlin personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of ARIZONA that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____

OFFICIAL SEAL
ANN ARMSTRONG
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 15, 2010

# EXHIBIT D

WHEN RECORDED MAIL TO:

**Tiffany & Bosco, P.A.**
Michael A. Bosco, Jr.
2525 E. Camelback Rd. Ste. 300
Phoenix, AZ 85016

Great American Title Agency

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20090041299  01/16/2009  04:11
ELECTRONIC RECORDING

2900234-1-3-2--
Esquivela

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE
09-40173 Earl

WHEREAS, **Rachael A. Earl, a married woman as her sole and separate property** was the original Trustor(s), **Arizona Title Agency, Inc.** was the original Trustee and **Mortgage Electronic Registration Systems, Inc.** was the original Beneficiary under that certain Deed of Trust dated **04/12/07** and recorded on **04/17/07** as Recording No./Book-Page 2007-0446763, of Official Records of Maricopa County, State of Arizona and described as:

Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.

WHEREAS, the undersigned present beneficiary under the said Deed of  Trust hereby appoints **Michael A. Bosco, Jr., whose address is 2525 East Camelback Road, Suite 300, Phoenix, Arizona 85016**, as **Successor Trustee** under said Deed of Trust, and is qualified to act as Successor Trustee per ARS Section 33-803 (A)2, as a member of the Arizona State Bar.

U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc.

By : Mark S. Bosco, Attorney at Law
By Limited Power of Attorney

State of Arizona)

County of Maricopa)

This instrument was acknowledged on January 15, 2009, before me the undersigned, Notary Public, by Mark S. Bosco, Attorney at Law by Limited Power of Attorney for the above corporation and that he executed the within instrument in behalf of said corporation as Beneficiary and being authorized so to executed.

OFFICIAL SEAL
ANN ARMSTRONG
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 15, 2010

Notary Public                          Exp. date

# EXHIBIT E

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20090041300  01/16/2009  04:11
ELECTRONIC RECORDING

2900234-2-3-3--
Esquivela

WHEN RECORDED MAIL TO:

**TIFFANY & BOSCO, P.A.**
Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016

0159737428/0159737428
Title No: 2900234
FHA/VA No.:

*Great American Title Agency*

## NOTICE OF TRUSTEE'S SALE
### File ID. #09-40173  Earl

Notice is hereby given that **Michael A. Bosco, Jr., Attorney at Law,** as trustee (or successor trustee, or substituted trustee), pursuant to the Deed of Trust which had an original balance of **$500,000.00** executed by **Rachael A. Earl, a married woman as her sole and separate property, 1311 South Claiborne Avenue, Gilbert, AZ 85296,** dated **April 12, 2007** and recorded **April 17, 2007,** as Instrument No./Docket-Page **2007-0446763** of Official Records in the office of the County Recorder of **Maricopa** County, State of Arizona, will sell the real property described herein by public auction on **April 17, 2009 at 10:00 A.M. at the office of Michael A. Bosco, Jr., Third Floor Camelback Esplanade II, 2525 East Camelback Road, in the City of Phoenix, County of Maricopa, State of Arizona,** , to the highest bidder for cash (in the forms which are lawful tender in the United States and acceptable to the Trustee, payable in accordance with ARS 33-811A), all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and more fully described as:

Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.

The street address/location of the real property described above is purported to be:

> **1311 S. Claiborne Ave.**
> **Gilbert, AZ  85296**
> **Tax Parcel No.: 313-10-317**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

*(Notice of Sale continued following page ........)*

*Page 2 of Notice of Trustee's Sale*
*File ID: 09-40173 Earl*

The beneficiary under the aforementioned Deed of Trust has accelerated the Note secured thereby and has declared the entire unpaid principal balance, as well as any and all other amounts due in connection with said Note and/or Deed of Trust, immediately due and payable.

Said sale will be made in an "as is" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided therein, and the unpaid principal balance of the Note secured by said Deed of Trust with interest thereon as proved in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

Current Beneficiary:
    U.S. Bank National Association, as Trustee for GSAA 2007-9
Care of / Servicer
    Wells Fargo Home Mortgage Inc
    Attn: F/C Dept.
    3476 Stateview Boulevard
    Fort Mill, SC 29715

Current Trustee:
Michael A. Bosco, Jr.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
(602) 255-6000

Dated : January 15, 2009

Michael A. Bosco, Jr., Attorney at Law
Trustee/Successor Trustee, is qualified per
ARS Section 33-803 (A)2 as a member of
The Arizona State Bar

STATE OF ARIZONA )
               ) ss.
County of Maricopa   )

This instrument was acknowledged before me on 01/15/09, by MICHAEL A. BOSCO, JR., Attorney at Law, as Trustee/Successor Trustee.

My Commission Expires:

OFFICIAL SEAL
ANN ARMSTRONG
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Jan. 15, 2010

Ann Armstrong, Notary Public
Commission expiration is 1/15/2010 12:00:00 AM

NOTICE: This proceeding is an effort collect a debt on behalf of the beneficiary under the referenced Deed of Trust. Any information obtained will be used for that purpose. Unless the loan is reinstated, this Trustee's Sale proceedings will result in foreclosure of the subject property.

# EXHIBIT F

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100035162  01/15/2010  08:31
ELECTRONIC RECORDING

2900234TD-3-1-1--
sarabiam

WHEN RECORDED MAIL TO :
**Tiffany & Bosco, P.A.**
**2525 E. Camelback Rd.**
**Ste. 300**
**Phoenix, AZ 85016**

Forward Tax Statements to :
Wells Fargo Home Mortgage Inc
3476 Stateview Boulevard, MAC #X7801-014
Fort Mill, SC 29715

| | |
|---|---|
| T & B File # 09-40173  Conv | |
| Mortgage Co.# 0159737428 | EXEMPT TRANSACTION – NO AFFIDAVIT |
| Title Co. # 2900234 | ARS 11-1134 (B)(1) |

Great American Title Agency, Inc.

## TRUSTEE'S DEED UPON SALE

**Michael A. Bosco, Jr.** , as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without any covenant or warranty to :

### US Bank National Association, as Trustee for GSAA 2007-9

herein called Grantee, the following described real property situated in **Maricopa** County, described as :

### See Attachment "A"

This conveyance is made pursuant to the powers including the power of sale conferred upon Trustee by said Deed of Trust executed **Rachael A. Earl, a married woman as her sole and separate property** , as Trustor, recorded on **04/17/07**, Instrument No./Docket-Page: **2007-0446763** Official Records in the Office of the County Recorder of **Maricopa** County, **AZ** and in compliance with the laws of the State of Arizona authorizing this conveyance.

Trustee's Deed
Page 2
09-40173

Said property was sold by Trustee at Public auction on January 14, 2010, at the place named in the Notice of Trustee's Sale. "Grantee", being the highest bidder at such sale, became the purchaser of said property and made payment thereof to said Trustee for the amount bid, namely $315,000.00, which payment was made either entirely in cash or by the satisfaction, protanto, of the obligation then secured by said Deed of Trust, together with the foreclosure and expenses relative thereto.

IN WITNESS WHEREOF, MICHAEL A. BOSCO, JR., as Trustee, has this day caused his name to be hereunto affixed.



**Michael A. Bosco, Jr.**
Digitally signed by Michael A. Bosco, Jr.
DN: c=US o=Tiffany & Bosco P.A. ou=Tiffany & Bosco, P.A., email=
Date: 2010.01.14 04.50.37 -07:00

Michael A. Bosco, Jr.

State of Arizona     )
                     )ss.
County of Maricopa   )

The foregoing instrument was acknowledged before me this 14th day of January, 2010, by Michael A. Bosco, Jr., as Trustee.

OFFICIAL SEAL
PAULA GRUNTMEIR
NOTARY PUBLIC  State of Arizona
MARICOPA COUNTY
My Comm. Expires Oct. 23, 2011

Digitally signed by Paula Gruntmeir
DN: c=US o=Tiffany & Bosco P.A. ou=10/23/11, email=
Date: 2010.01.14 04.50.37 -07:00

Notary Public for the said County and State
My Commission Expires: October 23rd, 2011

Trustee's Deed
Attachment "A"
09-40173

**Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.**

# EXHIBIT G

1

# T I F F A N Y   &   B O S C O
## P.A.

2525 E. CAMELBACK ROAD, SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192



**COPY**

FEB 0 5 2010

MICHAEL K. JEANES, CLERK
DEPUTY CLERK

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Plaintiff

10-01475

## IN THE SUPERIOR COURT OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

**CV2010-006146**

U.S. Bank National Association, as Trustee for
GSAA 2007-9 by its Attorney in fact Wells Fargo
Bank, N.A., successor by merger to Wells Fargo
Home Mortgage Inc.

        Plaintiff,

vs.

Rachael Earl ; John Does I-X, JOHN DOE
OCCUPANT1-5 AND JANE DOE OCCUPANT 1-
5,

        Defendant

Case No.:

C O M P L A I N T

Forcible Detainer after Trustee's Sale
pursuant to A.R.S. {12-1173.01,et seq.}

### YOU ARE BEING SUED TO BE EVICTED FROM THE RESIDENCE.

### PLEASE READ CAREFULLY

Plaintiff, alleges:

1.     Plaintiff is a corporation, which owns real property located in Maricopa County, Arizona

and seeks to recover possession of that real property. Defendant, Rachael Earl ; John Does I-X resident

of and has caused events and transactions to occur in Maricopa County, Arizona out of which this action arises.

2.     Pursuant to the power of sale provided by a Deed of Trust dated April 12, 2007, the following real property (the "property") was sold by the Trustee and purchased for valuable consideration by Plaintiff on January 14, 2010.

Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.

Also described as:     1311 South Clairborne Avenue
                       Gilbert, AZ 85296

3.     Pursuant to the Trustee's Sale, a Trustee's Deed was executed and delivered to Plaintiff, who thereby became the owner and party entitled to exclusive possession of the property. A true and accurate copy of the Trustee's Deed attached and marked Exhibit "1".

4.     On January 21, 2010, Defendant received Plaintiff's written notice demanding possession of the property. The Notice was properly given pursuant to A.R.S. Section 12-1173.01(A), a copy of which was both hand-delivered and sent by mail. A true and accurate copy of the Notice is attached and marked as Exhibits "2".

5.     At all times since the Trustee's Sale, Defendant has continuously occupied and is presently in wrongful possession of the property as tenants by sufferance against Plaintiff's consent. Defendant has failed or refused to surrender possession of the property after receipt of Plaintiff's written demand for possession and is guilty of forcible detainer.

6.     Plaintiff is entitled to immediate possession of the property and all fixtures and permanent improvements located thereon.

WHEREFORE, Plaintiff prays for Judgment against Defendant, jointly and severally, as follows:

A.   For a Judgment immediately terminating Defendant's right to possession and awarding Plaintiff the right to immediate possession of the property and all fixtures and permanent improvements located thereon.

B.   For an order to the clerk of the Maricopa County Superior Court to issue a Writ of Restitution five judicial days after rendition of Judgment to the Sheriff of Maricopa County, Arizona commanding him to immediately restore possession of the property to Plaintiff from Defendant and all persons holding or claiming a right to possession under Defendant or otherwise;

C.   For Plaintiff's reasonable attorneys' fees and court costs incurred in an amount not less than $500.00; and

D.   For such other and further relief as the Court or jury deems just and proper.

DATED this 2nd day of February, 2010.

TIFFANY & BOSCO, P.A.

By: _____
    Mark S. Bosco
    Leonard J. McDonald
    2525 East Camelback Road, Suite 300
    Phoenix, Arizona 85016
    Attorneys for Plaintiff

**VERIFICATION**

STATE OF ARIZONA )
                    )ss.
County of Maricopa )

       I, Leonard J. McDonald  being first duly sworn upon oath deposes and says:

       That I am the attorney for the Plaintiff in the above entitled action and I am authorized to make

this Verification in Plaintiff's behalf; that I have read the foregoing Complaint and know the contents

thereof; and that the statements and allegations contained therein are true and correct to the best of my

present knowledge, except as to those matters stated upon information and belief and as to those I

believe them to be true.

                                  _____
                                    Leonard J. McDonald

       SUBSCRIBED AND SWORN TO before me this _2_ day of _February_, 20_10_,
by Leonard J. McDonald.

       My Commission Expires:

                                  _____
                                    Notary Public

OFFICIAL SEAL
TIFFANY DOMINGUEZ
NOTARY PUBLIC  State of Arizona
MARICOPA COUNTY
My Comm. Expires Nov. 4, 2011

WHEN RECORDED MAIL TO :
**Tiffany & Bosco, P.A.**
**2525 E. Camelback Rd.**
**Ste. 300**
**Phoenix, AZ 85016**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100035162  01/15/2010  08:31
ELECTRONIC RECORDING

2900234TD-3-1-1--
sarabiam

Forward Tax Statements to :
Wells Fargo Home Mortgage Inc
3476 Stateview Boulevard, MAC #X7801-014
Fort Mill, SC  29715

| T & B File # 09-40173  Conv | |
| --- | --- |
| Mortgage Co.# 0159737428 | EXEMPT TRANSACTION – NO AFFIDAVIT |
| Title Co. # 2900234 | ARS 11-1134 (B)(1) |

Great American Title Agency, Inc.

## TRUSTEE'S DEED UPON SALE

**Michael A. Bosco, Jr.** , as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without any covenant or warranty to :

    **US Bank National Association, as Trustee for GSAA 2007-9**

herein called Grantee, the following described real property situated in **Maricopa** County, described as :

    **See Attachment "A"**

This conveyance is made pursuant to the powers including the power of sale conferred upon Trustee by said Deed of Trust executed **Rachael A. Earl, a married woman as her sole and separate property** , as Trustor, recorded on **04/17/07**, Instrument No./Docket-Page: **2007-0446763** Official Records in the Office of the County Recorder of **Maricopa** County, AZ and  in compliance with the laws of the State of Arizona authorizing this conveyance.

Trustee's Deed
Page 2
09-40173

Said property was sold by Trustee at Public auction on January 14, 2010, at the place named in the Notice of Trustee's Sale. "Grantee", being the highest bidder at such sale, became the purchaser of said property and made payment thereof to said Trustee for the amount bid, namely $315,000.00, which payment was made either entirely in cash or by the satisfaction, protanto, of the obligation then secured by said Deed of Trust, together with the foreclosure and expenses relative thereto.

IN WITNESS WHEREOF, MICHAEL A. BOSCO, JR., as Trustee, has this day caused his name to be hereunto affixed.



Digitally signed by Michael A. Bosco, Jr.
DN: c=US o=Tiffany & Bosco P.A. ou=Tiffany & Bosco, P.A., email=
Date: 2010.01.14 04.50.37 -07:00

Michael A. Bosco, Jr.

State of Arizona )
)ss.
County of Maricopa )

The foregoing instrument was acknowledged before me this 14th day of January, 2010, by Michael A. Bosco, Jr., as Trustee.

OFFICIAL SEAL
PAULA GRUNTMEIR
NOTARY PUBLIC  State of Arizona
MARICOPA COUNTY
My Comm. Expires Oct. 23, 2011

Digitally signed by Paula Gruntmeir
DN: c=US o=Tiffany & Bosco P.A. ou=10/23/11, email=
Date: 2010.01.14 04.50.37 -07:00

Notary Public for the said County and State
My Commission Expires: October 23rd, 2011

Trustee's Deed
Attachment "A"
09-40173

**Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.**



**TIFFANY**
**& BOSCO**
P.A.

2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6035
FACSIMILE: (602) 255-0192

**Financial Services**

**Attorneys at Law**

| | | |
|---|---|---|
| Mark S. Bosco | Beth A. Heath | Matthew H. McKinney |
| Michael A. Bosco, Jr. | Chad A. Hester | Tracy S. Morehouse |
| Lance R. Broberg | Richard G. Himelrick | Kevin P. Nelson |
| Darren T. Case | Dustin C. Jones | Richard E. Oney |
| David L. Case | Christopher R. Kaup | Dow Glenn Ostlund |
| J. James Christian | Robert V. Kerrick | James P. O'Sullivan |
| J. Daryl Dorsey | Pamela L. Kingsley | Jon M. Paladini |
| Dorian L. Eden | Todd T. Lenczycki | Alexander Poulos |
| William H. Finnegan | May Lu | Robert A. Royal |
| William M. Fischbach III | Leonard J. Mark | Shahpar Shahpar |
| Bradley P. Forst | J. Lawrence McCormley | William J. Simon |
| | Leonard J. McDonald | Michael E. Tiffany |

January 21, 2010

**Rachael A. Earl**
AND/OR OCCUPANTS
1311 South Clairborne Avenue
Gilbert, AZ 85296

      RE:    U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. vs. Earl
             Loan No.:     0159737428
             Our File No.:   10-01475
             NOTICE OF DEMAND FOR POSSESSION

Dear Rachael A. Earl:

    A Trustee's sale of the property located at 1311 South Clairborne Avenue, Gilbert, AZ 85296 was held on January 14, 2010 at which sale U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. became the owner of the property. The Trustee's Sale terminated any right you may have had to possession of the property.

    **IF YOU ARE THE FORMER OWNER OF THE PROPERTY, OR THE CHILD, SPOUSE, OR PARENT OF THE FORMER OWNER,** pursuant to A.R.S Section 12-1173.01, demand is hereby made that you surrender possession to U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. by vacating the property no later than January 28, 2010. If you fail or refuse to vacate the property by January 28, 2010, a lawsuit will be brought against you requiring your removal from the property by the Sheriff of Maricopa County. The lawsuit will also seek to recover the rental value of the property from the date of the Trustee's Sale to the date you vacate or are forcibly removed, plus attorney's fees and court costs.

    Additionally, A.R.S. Section 33-806 provides that should you cause <u>any</u> damage to the property, an action can (and will) be brought against you to recover money damages for the damage caused to the property.

    **IF YOU ARE A TENANT OF THE FORMER OWNER OF THE PROPERTY, AND NOT THE CHILD, SPOUSE, OR PARENT OF THE FORMER OWNER OF THE PROPERTY,** you may be entitled to additional rights as provided in the Protecting Tenants at

Foreclosure Act of 2009, including the right to remain in the property for 90 days from the date of receipt of this notice, before dispossessory proceedings are initiated against you. In order for us to determine on behalf of U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. what rights you may have under the Protecting Tenants at Foreclosure Act of 2009, **you must immediately forward to us the following:**

    (a) a copy of your written lease (if an oral lease you must provide us a summary of the terms of your oral lease, including: the term of the lease, monthly rental amount, and all other relevant lease terms);

    (b) proof of your alleged monthly rental amount (proof may be in the form of a copy of your lease showing the rent amount, or, if an oral lease, copies of cancelled checks or money orders);

    (c) proof that all monthly rental payments due under the lease have been paid to date (proof may be in the form of copies of cancelled checks, money orders, or a signed statement from your landlord stating that you have paid your rent in full as required by your lease);

    (d) the names of all occupants of the Property who are over 18 years of age; and

    (e) indicate whether you are a Section 8 tenant.

Effective immediately, your rental payments must be made by money order, cashier's check, or certified check (**DO NOT send cash or personal check),** and should be made payable to:

    U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc.

    Attn: Wells Fargo Bank, N.A. successor by merger with Wells Fargo Home Mortgage, Inc.

    c/o Premiere Asset Services 7485 New Horizon Way, MAC #X3901-023 Frederick, MD 21703

**On your Cashier's Check or Money Order, clearly indicate your Name and the Property Address, including your Apartment Number or Location.**

**Please note that you must advise our office** no later than January 28, 2010. If you fail to advise our office of your occupancy status by January 28, 2010, we will proceed with filing the lawsuit in order to obtain possession of the property.

Please note that you may wish to consult an attorney to help you determine what rights you may have, if any, under the Protecting Tenants at Foreclosure Act of 2009.

If you are an active member of the United States Armed Forces, you may be entitled to rights as provided in the Servicemembers Civil Relief Act. In such case, you or your attorney should contact this law firm immediately to determine if you fall under the protection of the Act.

Very truly yours,

TIFFANY & BOSCO, P.A.

Mark S. Bosco

MSB/TAD

# EXHIBIT H

# TIFFANY & BOSCO
### P.A.

2525 E. CAMELBACK ROAD, SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192

MICHAEL K. JEANES, CLERK
RECEIVED CCC #1
NIGHT DEPOSITORY

10 MAR -8 PM 4: 36

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Plaintiff

10-01475

## IN THE SUPERIOR COURT OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. <br><br> Plaintiff, <br><br> vs. <br><br> Rachael Earl., JOHN DOE OCCUPANT 1-5 AND JANE DOE OCCUPANT 1-5, <br><br><br> Defendants | CV2010-006146 <br><br><br> MOTION FOR JUDGMENT ON THE PLEADINGS <br><br> Forcible Detainer after Trustee's Sale pursuant to A.R.S. 12-1173.01 et. seq. |

U.S. Bank National Association, as Trustee for GSAA 2007-9 by its Attorney in fact Wells

Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage Inc. (herein after "Plaintiff"),

by and through counsel undersigned, and pursuant to Az.R.Civ.P. 12(c), hereby submits its Motion for

Judgment on the Pleadings. As established below, the Court should enter an order finding the

Defendants guilty of forcible entry and detainer, as there are no issues of fact for a jury to decide. This

Motion is based upon the following Memorandum of Points and Authorities attached hereto, as well as

the Court's entire file, which is incorporated herein by this reference.

RESPECTFULLY SUBMITTED this 8th day of March, 2010.

TIFFANY & BOSCO, P.A.

By_____
Mark S. Bosco
Leonard J. McDonald
2525 East Camelback Road
Phoenix, Arizona 85016
Attorneys for Plaintiff

## MEMORANDUM OF POINTS AND AUTHORITIES

**Statement of Facts:**

On or about April 12, 2007, Rachael Earl , executed and delivered a Promissory Note in favor of Freedom Home Mortgage Corporation, in the principal sum of 500,000.00 . The Note was secured by a Deed of Trust on real property known 1311 South Clairborne Avenue , Gilbert AZ 85296 ("the Property"). The party obligated to make payments on the note defaulted by failing to make monthly payments due Plaintiff.

Plaintiff initiated Trustee's Sale proceedings on the Property on by recording the Notice of Trustee's Sale scheduling the sale of the Property for April 17, 2009. The sale was postponed and eventually held on January 14, 2010. Plaintiff was the successful purchaser of the Property at the Trustee's Sale for its high bid in the amount of 315,000.00 . The Trustee duly deeded the Property to Plaintiff. A copy of the Trustee's Deed is attached to the Complaint.

Plaintiff made demand upon the Defendant to vacate the Property; however, the Defendant failed and refused to do so. A copy of the demand letter is attached to the Complaint. Accordingly, Plaintiff initiated a Forcible Entry and Detainer action to remove the Defendant from the Property.

**Statement of Law**

A.R.S. § 33-811(A) provides:

> ...the Trustee's deed shall raise the presumption of compliance with the requirements of this chapter relating to the exercise of the power of sale and the sale of the trust property, including recording, mailing, publishing, and posting of the notice of sale and the conduct of the sale.

The issuance of a Trustee's Deed to a purchaser of trust property is <u>conclusive</u> evidence that the statutory requirements for sale were satisfied. A.R.S. § 33-811(A). See also <u>Triano v. First American Title Insurance Company of Arizona</u>, 131 Ariz. 581, 643 p.2d 26 (App. 1982).

The Property was purchased by Plaintiff at a Trustee's Sale. On January 14, 2010, the Successor Trustee issued a Trustee's Deed to Plaintiff. The Trustee's Deed to Plaintiff was at that time conclusive evidence that all statutory requirements for the Trustee's Sale were satisfied.

A.R.S. § 12-1177(A) provides:

> On the trial of an action of Forcible Entry or Forcible Detainer, the only issue shall be the right of actual possession and the merits of title shall not be inquired into.

A Forcible Entry and Detainer action is a summary statutory remedy for obtaining possession of premises by the party entitled to actual possession. <u>Gangadean v. Erickson</u>, 17 Ariz. App. 131, 495 P.2d 1338 (1972). The object of an action under this section is to afford a speedy and adequate remedy for obtaining possession of premises wrongly withheld. <u>Olds Brothers Lumber Company v. Rushing</u>, 64 Ariz. 199, 167 P.2d 394 (1946). Counterclaims, Cross-Complaints of offsets are not available in a Forcible Entry and Detainer action; the only issue to be determined is the actual right to possession. <u>Gangadean, supra</u>. In <u>Curtis v. Morris</u>, 186 Ariz. 534, 925 P.2d (Az. Supreme Ct. 1996), the Supreme Court of Arizona ruled that a court may not determine the validity of title in forcible detainer actions.

...

...

The Trustee's Deed to Plaintiff is conclusive evidence that all statutory requirements pertaining to the Trustee's Sale were met. Plaintiff is entitled to actual possession of the property by virtue of the Trustee's Deed. The Supreme Court of Arizona has held that issues of title cannot be heard in a Forcible Entry and Detainer action. The pleadings are closed. Plaintiff now requests the Court to rule on the pleadings pursuant to Az.R.Civ.P. 12(C). There are no issues of fact for a jury to decide.

RESPECTFULLY SUBMITTED this 8th day of March, 2010.

TIFFANY & BOSCO, P.A.

By_____
            Mark S. Bosco
            Leonard J. McDonald
            2525 East Camelback Road
            Phoenix, Arizona 85016
            Attorneys for Plaintiff

Original of the foregoing filed
this 8th day of March, 2010 with:

Commissioner David O. Cunanan
125 W. Washington
Phoenix, AZ 85003

COPY of the foregoing hand-delivered this
8th day of March, 2010, to:

Commissioner David O. Cunanan
125 W. Washington,
Phoenix, AZ 85003

COPY of the foregoing mailed this
8th day of March, 2010, to:

Rachael A. Earl
AND/OR OCCUPANTS
1311 South Clairborne Avenue
Gilbert, AZ 85296

By_____

WHEN RECORDED MAIL TO :
**Tiffany & Bosco, P.A.**
**2525 E. Camelback Rd.**
**Ste. 300**
**Phoenix, AZ 85016**

Forward Tax Statements to :
Wells Fargo Home Mortgage Inc
3476 Stateview Boulevard, MAC #X7801-014
Fort Mill, SC  29715

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20100035162   01/15/2010   08:31
ELECTRONIC RECORDING

2900234TD-3-1-1--
sarabiam

T & B File # 09-40173  Conv
Mortgage Co.# 0159737428
Title Co. # 2900234

EXEMPT TRANSACTION – NO AFFIDAVIT
ARS 11-1134 (B)(1)

Great American Title Agency, Inc.

# TRUSTEE'S DEED UPON SALE

**Michael A. Bosco, Jr.** , as the duly appointed Trustee (or successor Trustee or Substituted Trustee), under a Deed of Trust referred to below, and herein called Trustee, does hereby grant without any covenant or warranty to :

**US Bank National Association as Trustee for GSAA 2007-9**

herein called Grantee, the following described real property situated in **Maricopa** County, described as :

**See Attachment "A"**

This conveyance is made pursuant to the powers including the power of sale conferred upon Trustee by said Deed of Trust executed **Rachael A. Earl, a married woman as her sole and separate property** , as Trustor, recorded on **04/17/07**, Instrument No./Docket-Page: **2007-0446763** Official Records in the Office of the County Recorder of Maricopa County, **AZ** and  in compliance with the laws of the State of Arizona authorizing this conveyance.

Trustee's Deed
Page 2
09-40173

Said property was sold by Trustee at Public auction on January 14, 2010, at the place named in the Notice of Trustee's Sale. "Grantee", being the highest bidder at such sale, became the purchaser of said property and made payment thereof to said Trustee for the amount bid, namely $315,000.00, which payment was made either entirely in cash or by the satisfaction, protanto, of the obligation then secured by said Deed of Trust, together with the foreclosure and expenses relative thereto.

IN WITNESS WHEREOF, MICHAEL A. BOSCO, JR., as Trustee, has this day caused his name to be hereunto affixed.



Digitally signed by Michael A. Bosco, Jr.
DN: c=US o=Tiffany & Bosco P.A. ou=Tiffany & Bosco, P.A., email=
Date: 2010.01.14 04.50.37 -07:00

Michael A. Bosco, Jr.

State of Arizona )
)ss.
County of Maricopa )

The foregoing instrument was acknowledged before me this 14th day of January, 2010, by Michael A. Bosco, Jr., as Trustee.

OFFICIAL SEAL
PAULA GRUNTMEIR State of Arizona
NOTARY PUBLIC
MARICOPA COUNTY
My Comm. Expires Oct. 23, 2011

Digitally signed by Paula Gruntmeir
DN: c=US o=Tiffany & Bosco P.A. ou=10/23/11, email=
Date: 2010.01.14 04.50.37 -07:00

Notary Public for the said County and State
My Commission Expires: October 23rd, 2011

Trustee's Deed
Attachment "A"
09-40173

**Lot 196, AGRITOPIA, PHASE 2A, according to Book 691 of Maps, Page 4, and Affidavit of Correction recorded as 2004-1145385, records of Maricopa County, Arizona.**

20100035162
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL



The foregoing instrument is an
**electronically prepared**
full, true and correct copy
of the original record in this
office.
Attest: 08/03/2010 02:02:22 PM

By _____ Recorder

To Verify this purchase visit
http://recorder.maricopa.gov/cert.aspx?id=16806

# EXHIBIT I

## The Judicial Branch of Arizona, Maricopa County

**Civil Court Case Information - Case History**

### Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2010-006146 | **Judge:** | Barth, Michael |
| **File Date:** | 2/1/2010 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

### Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| U S Bank National Association | Plaintiff | | LEONARD MCDONALD |
| Rachael Earl | Defendant | Female | Kevin Jensen |

### Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 1/11/2011 | AAS - Affidavit Of Attempted Service | 1/19/2011 | |
| 1/11/2011 | WRE - Writ Of Restitution | 1/14/2011 | |
| 12/6/2010 | PRA - Praecipe | 12/8/2010 | |

**NOTE:** WRIT OF RESTITUTION

| | | | |
|---|---|---|---|
| 11/26/2010 | ORD - Order | 12/1/2010 | |

**NOTE:** AMENDED/THAT EACH DEFENDANT'S RIGHT TO POSSESSION OF THE PROPERTY LOCATED AT 1311 SOUTH CLAIRBORNE AVENUE GILBERT AZ 85296 IS TERMINATED AND PLAINTIFF IS ENTITLED TO IMMEDIATE POSSESSION OF THE PROPERTY AND ALL FIXTURES PERMANENT IMPROVEMENTS AND APPURTENANCES LOCATED THEREON

| | | | |
|---|---|---|---|
| 11/22/2010 | MOT - Motion | 11/26/2010 | |

**NOTE:** TO CORRECT CLERICAL MISTAKE

| | | | |
|---|---|---|---|
| 9/20/2010 | PRA - Praecipe | 9/23/2010 | |

**NOTE:** WRIT OR RESTITUTION

| | | | |
|---|---|---|---|
| 8/23/2010 | 049 - ME: Judgment Signed | 8/23/2010 | |
| 8/20/2010 | AMS - Affidavit Alternative Method of Service | 9/2/2010 | |

**NOTE:** 02/14/2010 / NAIL AND MAIL

| | | | |
|---|---|---|---|
| 8/20/2010 | SUM - Summons | 8/26/2010 | |
| 8/19/2010 | OBJ - Objection/Opposition. | 8/26/2010 | |

**NOTE:** TO PLAINTIFFS MOTION FOR JUDGMENT ON THE PLEADINGS

| | | | |
|---|---|---|---|
| 8/19/2010 | JFD - Judgment Forcible Detainer | 8/30/2010 | |

**NOTE:** Notice of filing and entry provided to the parties

| | | | |
|---|---|---|---|
| 8/4/2010 | 064 - ME: Trial Continued/Reset | 8/4/2010 | |
| 8/3/2010 | PHA - Pro Hac Vice Application | 8/4/2010 | |

**NOTE:** Pro Hac Vice Application

| | | | |
|---|---|---|---|
| 8/3/2010 | MCO - Motion To Continue | 8/5/2010 | |

**NOTE:** EMERGENCY

| | | | |
|---|---|---|---|
| 7/30/2010 | LOW - List Of Witnesses/Exhibit/Evidence | 8/2/2010 | |

**NOTE:** Defs List of Witnesses and Exhibits

| | | |
|---|---|---|
| 7/13/2010 | 022 - ME: Order Signed | 7/13/2010 |
| 7/12/2010 | 064 - ME: Trial Continued/Reset | 7/12/2010 |
| 7/12/2010 | ORD - Order | 7/23/2010 |

**NOTE:** THAT THE FORCIBLE ENTRY AND DETAINER HEARING SCHEDULED FOR JULY 6 2010 AT 1:30 PM BE RESCHEDULED TO THE 3RD DAY OF AUGUST AT 3:30 PM

| | | |
|---|---|---|
| 7/2/2010 | SFC - Stipulation For Continuance | 7/2/2010 |

**NOTE:** Stipulation to Continue Forcible Detainer Hearing Scheduled for July 6, 2010

| | | |
|---|---|---|
| 6/16/2010 | 064 - ME: Trial Continued/Reset | 6/16/2010 |
| 6/16/2010 | NAR - Notice Of Appearance | 6/17/2010 |
| 6/16/2010 | ANS - Answer | 6/17/2010 |

**NOTE:** VERIFIED

| | | |
|---|---|---|
| 5/11/2010 | 064 - ME: Trial Continued/Reset | 5/11/2010 |
| 3/19/2010 | 089 - ME: Trial Setting | 3/19/2010 |
| 3/8/2010 | LOW - List Of Witnesses/Exhibit/Evidence | 3/10/2010 |
| 3/8/2010 | MOT - Motion | 3/10/2010 |

**NOTE:** FOR JUDGMENT ON THE PLEADINGS

| | | | |
|---|---|---|---|
| 3/5/2010 | NOB - Notice Of Filing Bankruptcy | 3/9/2010 | Defendant(2) |

**NOTE:** CHAPTER 13

| | | |
|---|---|---|
| 3/3/2010 | 089 - ME: Trial Setting | 3/3/2010 |
| 3/1/2010 | LET - Letter | 3/9/2010 |
| 3/1/2010 | MOT - Motion | 3/5/2010 | Defendant(2) |

**NOTE:** FOR ENLARGEMENT OF TIME/JURY TRIAL DEMANDED

| | | | |
|---|---|---|---|
| 2/26/2010 | 004 - ME: Hearing Continued | 2/26/2010 | |
| 2/22/2010 | NUS - Notice Of Removal Us District Court | 3/2/2010 | Defendant(2) |
| 2/7/2010 | COM - Complaint | 2/10/2010 | |

## Case Calendar

| Date | Time | Event |
|---|---|---|
| 2/22/2010 | 9:45 | Forcible Detainer Hearing |
| 3/1/2010 | 9:30 | Forcible Detainer Hearing |
| 3/10/2010 | 14:00 | Forcible Detainer Trial |
| 5/10/2010 | 13:30 | Forcible Detainer Trial |
| 6/14/2010 | 14:00 | Forcible Detainer Trial |
| 7/6/2010 | 13:30 | Forcible Detainer Trial |
| 8/3/2010 | 15:30 | Forcible Detainer Trial |
| 8/19/2010 | 15:00 | Forcible Detainer Trial |

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|

| 8/19/2010 | F:U S Bank National Association | | One Time | Judgment Only |
| | A: Rachael Earl | | | |

# EXHIBIT J

COPY

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA     FEB 1 9 2010
IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| Rachael A. Earl | ) | CASE NO. |
| Plaintiff | ) | |
| | ) | CV2010-090616 |
| v. | ) | |
| | ) | VERIFIED COMPLAINT |
| Freedom Home Mortgage Corporation | ) | FOR EMERGENCY TEMPORARY |
| Mark S. Bosco, Michael A. Bosco Jr., | ) | RESTRAINING ORDER AND |
| Mortgage Electronic Registration Systems, | ) | REQUEST FOR DECLARATORY |
| Inc., Arizona Title Agency, Inc., and, | ) | AND INJUNCTIVE RELIEF |
| John Doe and Jane Doe, one up | ) | |
| Defendants | ) | JURY TRIAL DEMANDED |
| | ) | |

## VERIFIED COMPLAINT FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF TO VACATE TRUSTEE'S SALE

**NOW COMES Plaintiff, Rachael A. Earl, (hereinafter referred to as Plaintiff and/or Earl)** who files this Verified Complaint for Emergency Temporary Restraining Order and Request for Declaratory and Injunctive Relief, to Vacate Trustee's Sale of Plaintiff's property, as occurred on January 14, 2010, and, to Void Ab Initio, the Deed of Trust as unlawfully executed on April 12, 2007, due to, inter alia, it's operation as a Cognovit Note/Confession of Judgment, without due process afforded Plaintiff; failure to possess the original, genuine promissory note; violation of Plaintiff's right to privity of contract; as well as contract adhesion, unconscionability, both procedurally and substantively and, related violations of Plaintiff's rights.

Plaintiff further seeks Enjoin Defendants' and/or any party named or as yet named, from Selling, Converting, or, by any means whatsoever,

Dispossessing Plaintiff of her Property, including, but not limited to Staying Defendants' action in Forcible Detainer, as currently scheduled for Monday, February 22, 2010 until all Facts, are Clarified; as, to be determined following full disclosure and the completion of discovery, which is now pending, pursuant to and in accordance with, the united States Constitution and, the Arizona State Constitution, and, A.R.C.P. Rule 60(c) and ARCP Rule 55(c).

Plaintiff invokes the power of this Court for the deprivation of Plaintiff's Due Process rights; deprivation of Plaintiff's right to redress her grievances and access to court; deprivation of Plaintiff's right to property; and, for the deprivation of Plaintiff's right to have a jury, as afforded under the Fourteenth, First, Fifth, and Seventh Amendments, of the united States Constitution, and, as found in the Arizona State Constitution, and not limited to, Article 2, Sections 1, 3, 4, and 9, respectively; and, directly challenges certain provisions as contained within the Arizona Revised Statutes, including, but not limited at ARS § 12-1832, seeking inter alia, a determination as to their constitutionality, namely, invocation and import of a Power of Sale clause, operating under the guise of a confession of judgment/cognovit note, irrevocably enforced, that heretofore, does not require the requisite noticing for the enforcement thereof, thus conflicting with, and in abrogation of, the constitutional protections afforded by both the united States and Arizona Constitutions, all, to the irreparable harm and injury of both the Plaintiff, and, to the citizenry of Arizona.

In accordance with the aforesaid, Plaintiff now states the following:

## PARTIES

1.   Plaintiff, Rachael A. Earl, is natural-born citizen of the State of Arizona, who, at all material times relevant hereto, is/was domiciled at 1311 South Claiborne Avenue, Gilbert, Arizona. Plaintiff avers for purposes expressed herein that she is an unsophisticated and/or least susceptible borrower, subject to the misleading and deceptive acts as committed against her by both, defendants known and unknown.

2.   Defendant, Freedom Home Mortgage Corporation ("FHMC") is, at all material times relevant hereto, reported by a certain Deed of Trust to be the original lender, and servicer. FHMC lists an address of 907 Pleasant Valley Avenue, Mt. Laurel, New Jersey 08054.

3.   Defendant, Mark S. Bosco, (hereinafter, "Bosco") appears to where many hats here, but for all pretense and purposes, Bosco, is a debt collector, as defined by Title 15 U.S.C. § 1692 et seq., operating what is tantamount to wholesale slaughter upon innumerable numbers of Arizona families, by divesting them of their property rights; employing nefarious means; nepotism; and, other questionable measures of a arbitrary and capricious nature, to further an unjust enrichment on the backs of Arizona citizens. Defendant Mark S. Bosco lists his address as 2525 East Camelback Road, Suite 300, Phoenix, Arizona 85016.

4.  Defendant, Michael A. Bosco, Jr., (hereinafter "Bosco Jr.") is, upon information and belief of Plaintiff, working in a colluded and/or conspiring with Defendant Mark S. Bosco. Defendant Bosco Jr., is thought to be immediate family of Defendant Mark S. Bosco, and accordingly, is, at all material times relevant hereto, also a debt collector, as defined by Title 15 U.S.C. § 1692 et seq. Michael J. Bosco Jr., lists his address as, Third Floor, Camelback Esplanade II, 2525 East Camelback Road, Phoenix, Arizona 85016. Plaintiff believes this address is essentially identical to defendant Mark s. Bosco's address.

5.  Defendant, Arizona Title Agency, Inc., (hereinafter "ATA") is listed as the original trustee, with a listed address of 4041 N. Central Avenue, No. D-100, Phoenix, Arizona 85012.

6.  Defendant, Mortgage Electronic Registration Systems, Inc, (MERS), is, alleged to be or have been, the Beneficiary by nominee of lender. Upon information and belief of Plaintiff, is, a national repository, and/or clearinghouse, for mortgage notes, assignments, and related security instruments. Plaintiff believes that the creation of MERS was specifically designed to hide the true identity of Note holders, and their subsequent assignees, for the expressed purpose of said notes frequent bundling en masse, and subsequent, unbridled exchange into the stream of commerce, thereby, circumventing the uniform (required)

noticing to borrows and alike, as to who, at any given time, actually owns the note(s). MERS has a registered office, located at 7301 Baymeadows Way, Jacksonville, Florida 32256 and, mailing address of P.O. Box 2026 Flint, Michigan 48501-2026.

7. John and Jane Doe, one up, are "persons" who plaintiff believes, following discovery, are likely to be named as additional defendant(s).

## OPERATIVE FACTS

8. Plaintiff hereby incorporates paragraphs one (1) through seven (7) as if they are set forth at length, herein.

9. Plaintiff avers that, because of the nefariously cloaked actions of the various Defendants, and, the convoluted nature by which they have operated, the factual background as provided herein remains incomplete, as to succinctly and concisely ascertain the exact roles of the Defendants known, and yet to be known. Accordingly, Plaintiff needs sufficient opportunity to conduct discovery, as to properly ferret out these issues, so that the full import of (all) Defendants' actions, individually and severally, are clear. Notwithstanding the aforementioned, Plaintiff provides the following summary:

10. On or about April 12, 2007 Plaintiff executed a Deed in Trust, which named, Freedom Home Mortgage Corporation, as original lender and servicer; Mortgage Electronic Registration Systems,

Inc., (MERS) as beneficiary; and, Arizona Title Agency, Inc., as original Trustee.

11. On or about January 15, 2009, allegedly, a Statement of Breach or Non-Performance was filed by Defendant Mark S. Bosco, acting in the capacity of limited power of attorney, for, U.S. Bank National Association, as Trustee for GSAA 2007-9, by its attorney-in-fact, Wells Fargo Bank N.A., as successor by merger with Wells Fargo Home Mortgage Inc.

12. On or about January 16, 2009 a purported substitution of trustee was executed, whereby, Defendant Bosco, acting on behalf of Defendant MERS, by limited power of attorney alleged to be acquired from U.S. National Association, as Trustee for "GSAA 2007-9, by its alleged attorney-in-fact, Wells Fargo Bank, N.A., as successor by merger to Wells Fargo Home Mortgage Inc., substituting ATA as Trustee, naming Michael A. Bosco Jr., as Trustee.

13. The foregoing Substitution of Trustee, essentially, through a web deceptively weaved, appears to have Defendant Bosco directly substituting a direct member of his family, Defendant, Michael J. Bosco Jr., as Trustee.

14. On or about January 16, 2009 a Notice of Trustee Sale was executed by Defendant Bosco, which additionally, now names U.S. Bank, National Association, beneficiary, as Trustee for

GSAA 2007-9, and, Wells Fargo Home mortgage Inc., as the servicer.

15. Upon information and belief, and recent research of Plaintiff, GSAA 2007-9 represents a pass-through certificate, and not an actual entity unto itself, which, consist of mortgages, purchased individually and then subsequently placed collectively into a Trust.

16. Subsequently, a Trustee sale was set by Defendant Bosco, only to be reset by said Defendant.

17. Finally, a sheriff sale was once again set for January 7, 2010.

18. Plaintiff then hired Michael Lofgran, a licensed process server, for the expressed purpose of serving a complaint upon the above-captioned defendants and, to investigate whether said sale was to occur on that date.

19. On January 7, 2010 at approximately 8:35 am, Mr. Lofgran contacted directly, Defendant Bosco and spoke with "Pat" regarding the Trustee sale.

20. Mr. Lofgran was informed that the sale as then scheduled for January 7, 2010 had been moved to February 9, 2010 at 12 pm.

21. Subsequently, upon being informed by Mr. Lofgran that said sale had been continued to February 9, 2010, Plaintiff directly contacted Defendant Bosco at 8:50 am to confirm this, and likewise, was informed that the sale that was originally

scheduled for January 7, 2010, had indeed, been continued to February 9, 2010 at 12 pm.

22. Plaintiff then checked the County Recorder's information on the tax records for Plaintiff's property, which directly supported the information given by Defendant Bosco, that the sale of Plaintiff's property had been moved to February 9, 2010.

23. On January 19, 2010, Plaintiff first received notice taped to her door, by Judy Johnson, a realtor with Gilbert Realty, that her property had in fact, been sold on January 14, 2010.

24. This notice was/is contrary to what Mr. Lofgran had been informed by Defendant Bosco directly, and, contrary to what Plaintiff concurred as having been continued by the County Recorder's records, which also indicated the pending sale had been postponed.

25. On January 19, 2010 at 10:30 am, Plaintiff once again contacted Defendant Bosco and spoke to "Pat".

26. Plaintiff reiterated her previous call to "Pat" and that of Mr. Lofgran, concerning the postponement of sale of plaintiff's property.

27. "Pat" was further informed that this information of postponement was further supported by the County Records, which, Plaintiff copied.

28. "Pat" denied ever having made such a statement to Plaintiff and went on to state that in her computer, the date for the sale was actually supposed to be January 14, 2010.

29. Plaintiff inquired of "Pat", how Plaintiff was suppose to know, having relied on the information given by "Pat" that was further substantiated by the County Records, that the date was moved backwards, and without any notice to Plaintiff.

30. "Pat" informed Plaintiff to e-mail the proof to "Christopher", so he could take a look at that information and then call Plaintiff.

31. "Pat" then went on to state that the sale date had been reversed, and the "buyer" would have the option of proceeding on with the purchase; "Pat" then proceeded to hang up on Plaintiff.

32. Plaintiff the immediately e-mailed the information regarding the postponement of the sale, as found in the County Records, directly to "Christopher" at the designated address, at 10:52 on January 19, 2010.

33. Subsequently, "Christopher" e-mailed back Plaintiff, asking Plaintiff to call him.

34. Plaintiff immediately called "Christopher" who did not and/or would not answer his phone.

35. Plaintiff, unable to talk to "Christopher" on the phone as "Christopher" himself suggested Plaintiff do, subsequently e-mailed the facts to "Christopher".

36. "Christopher" contacted Plaintiff at 4pm, and stated he did not want to discuss anything over e-mail.

37. "Christopher" went on to state that the information printed from the County Recorders records that Plaintiff sent via e-mail, was not valid proof, and, he did not know where Plaintiff ever got that information.

38. "Christopher" went on to state that that their system (Defendant Bosco's) also indicated that the sale date was February 9, 2010, but that the (unidentified) lender called and told them to move the date back to January 14, 2010.

39. Plaintiff asked, How would I, as a homeowner, wanting to protect her property, ever get such information, if your office on two separate calls, and that of the County Recorder's office indicated otherwise?

40. "Christopher" replied that Plaintiff should have looked in their system. This despite the fact that Defendant Bosco had previously stated that their "system" said sale had been postponed to February 9, 2010; and, following the posting of Plaintiff's property on January 19, 2010, and Plaintiff's immediate call to Defendant Bosco, that the sale date was reversed back to January 14, 2010, neither of which was indicia to the original date as noticed of January 7, 2010.

41. "Christopher" went on to state that under Arizona law, they can change the date of sale up to the day before the sale, which if true, that sale should not have occurred prior to February 9, 2010.

42. Plaintiff inquired as if said Defendant(s) could change a sale date forward or backwards at their whim, without giving notice, to which, "Christopher" replied, we can do whatever we want to.

43. Plaintiff then inquired, based on the information presented them, and the fact that there was no notice thereof, (including, but not limited to any interested party that may wish to attend said sale), if based on this information provided them, would they reverse the sale; to which "Christopher" replied, "No."

44. Plaintiff, who had been preparing up a lawsuit against the said Defendants', for violations of her rights, only to be stalled by the deceptive acts of said Defendants, then informed "Christopher" that Plaintiff would be filing a lawsuit in this matter.

45. Plaintiff now brings the following actions against said defendants.

## CAUSE OF ACTION/CLAIMS FOR RELIEF

### A. DUE PROCESS

46. Plaintiff hereby incorporates paragraphs one (1) through forty-five (45) as if they are set forth at length, herein.

47. On or about April 12, 2007, Plaintiff executed a Deed of Trust. This Deed of Trust, named Defendant MERS as nominee for the Beneficiary, (purportedly) on behalf of the (alleged) lender, (and servicer) Defendant, FHMC; and, Defendant, ATA, as the original Trustee.

48. Plaintiff, further avers that, prior to, during and up to recent event, Plaintiff had no knowledge whatsoever as to particular terms contained within the Deed of Trust, which, Plaintiff learned much later, contained a small and somewhat hidden and/or disguised provision, known as a Power of Sale Clause.

49. The Deed of Trust comprises a fourteen (14) page document; which, aside from plaintiff's lone signature, affixed to page thirteen (13) and, plaintiff's initials, correcting only the (incorrect) address of the property, no other indication whatsoever is given, as to signify Plaintiff's acknowledgement of the contents thereof, is provided.

50. Specifically, it is believed and therefore averred that, Defendants' furthered their concealment, to the deprivation and subsequent abrogation of Plaintiff's rights, by directing Plaintiff away from the Power of Sale clause, which was hidden, within.

51. Plaintiff believes and therefore avers, that Defendants willfully and intentionally concealed the aforesaid Clause, for the expressed purpose of depriving an otherwise unknowing Plaintiff

of her fundamental rights to Due Process, by unconscionable means.

52.    The Fourteenth Amendment to the united States Constitution reads, " No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."

53.    The Due Process Clause of the united States Constitution requires "timely individual notice…, before their property can be adversely affected". See **Volkswagenwerk Aktiengesallschaft v. Schlunk**, 486 U.S. 694,707 (1988)

54.    Plaintiff was (unknowingly) deprived of her Due Process (and other) rights, as guaranteed under the Fourteenth Amendment of the united States Constitution and Article II, Section Four, of the Arizona State Constitution; as, Defendants', in the first instance, through unconscionable means, caused to be executed a certain Deed of Trust, which, unknown, nor otherwise explained to plaintiff, lacked the proper "Notice", having substituted in lieu of, a obscure and/or hidden provision for the unfettered power of sale of Plaintiff's property.

55.    Notice is a Due Process issue, that in the absence thereof, constitutes the abrogation of Plaintiff's substantive and procedural due process rights as afforded under the **Fifth (5th)**

and **Fourteenth (14ᵗʰ) Amendments**, guaranteed Plaintiff by the **united States Constitution**.

56. **Mullane v. Central Hanover Bank & Trust Co.**, 339 U.S. 306 (1950) (*"An elemental and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections."*)

## B. POWER OF SALE/COGNOVIT NOTES

57. Plaintiff hereby incorporates paragraphs one (1) through fifty-six (56) as if they are set forth at length herein

58. Upon information and belief of Plaintiff, a power of sale clause, as contained within a Deed of Trust, is akin in performance to a cognovit note and/or confession of judgment, however, it operates far more insidiously; as, it specifically robs the (unknowing) maker of certain or otherwise assured rights and remedies, including, but not limited to Due Process, and redress by appeal, whilst wholly evading the requisite (form and manner of) noticing as encumbering cognovits or confessions.

59. Article II, Section Nine of the Arizona Constitution states in pertinent part that, " No law granting irrevocably any privilege, franchise, or immunity shall be enacted."

60.    Upon information and belief of Plaintiff, the hidden power of sale clause, which in effect, creates a cognovit note/confession of judgment, as irrevocably granted in a Deed of Trust, does just that; it creates conditions that are in violation of the Arizona Constitution.

61.    WHAT IS A COGNOVIT NOTE? A cognovit note is not an ordinary note. It is indeed an extraordinary note, which, authorizes an attorney, and/or authorized representative to confess judgment against the person or persons signing it. It is written authority of the debtor and a direction by him or her for the entry of a judgment against debtor, if the obligation set forth in the note is not paid when due.

62.    Such a judgment (of confession) may be taken by any person or any company holding the note, only if specifically and diligently pointed out and discussed as to the legal ramifications in so doing; for it cuts off every defense which the maker of the note might otherwise possess. It likewise cuts off all rights of appeal from any judgment taken on it.

63.    According to The United States Supreme Court, "a cognovit note is the ancient legal device by which the debtor consents in advance to the holder's obtaining a judgment without notice or hearing, and possibly even with the appearance, on the debtor's behalf, of an attorney designated by the debtor".

64. Justice Blackmum, expressing the unanimous view of the court in **Overmyer v. Frick,** 405 U.S. 174, 92 S.Ct. 775, L.Ed.2d 124 (1972), stated the criteria for establishing constitutionality of a Cognovit Note is not determine upon the theory of the note <u>but the method used by both parties to afford each other due process</u> protection afforded by the Fourteenth Amendment. (emphasis added)

65. Judge Blackmum stated, "…[i]t was held that (1) a cognovit clause was not, per se, violative of the Fourteenth Amendment due process requirements as to prejudgment notice and hearing, and (2) under the facts in the instant case, (**Overmyer**) due process was not violated by the entry of the confessed judgment, since the record established that <u>the debtor had knowingly and voluntarily waived its rights to notice and hearing, with full awareness of the legal consequences,</u> by executing the cognovit note, which was <u>supported by consideration</u> from the creditor, and which had resulted <u>from negotiations between the parties of equal bargaining power,…" **Id** (emphasis added)

66. Justice Douglas, joined by Justice Marshall concurring, stated, in effect that, (1) <u>the record must establish that a clear and unmistakable, voluntarily and intelligently valid waiver of the debtor's constitutional rights,</u> (2)… a trial judge was required to vacate a judgment obtained through a cognovit clause when

presented sufficient evidence of an affirmative defense to pose a

jury question, a preponderance of evidence burden not being

imposed, and (3) and, the preponderance of the evidence in the

(present) case does not support even a conclusionary finding that

Plaintiff was even aware of the existence of any cognovit note,

let alone intentionally, deliberately, knowingly and intelligently

waive her due process rights.

67. Justice Douglas, further observed, "Debtors receive the benefit of

credit at a lower rate of interest than they would receive if they

did not give the creditor the right to confess judgment against

them. Nevertheless, the right to be heard in court is central to our

system of justice, and, as with other constitutional rights, there is

no presumption of waiver. **Overmyer, 405, U.S. 174, 31 L. 2d**

**124, 92S.Ct. 775 (1972) and its companion case, Swarb v.**

**Lennox, 405 U.S. 191, 31 L. ed.2d 138, 92 S.Ct. 767 (1972)**

**and at 186, 188.** (emphasis added)

68. Based upon the Defendants' lack of credible evidence and/or

proof that Plaintiff ever waived or was ever advised of her legal

detriment upon the signing of what must be characterized, at

best, as a hidden cognovit clause, is just preposterous and is

sufficient to warrant presentation to a jury.

69. In order to help determine the validity of the cognovit note and/or

confession of judgment before this Court, one must concede that

the mentioned contract containing the hidden clause, which was never explained to the Plaintiff, so she was never aware of waiving his fourteenth amendment rights through a contract of adhesion (illegal and/or void contract) or the product of disparity in the parties' bargaining power.

70. Most contracts of adhesion are either procedural and/or substantively unconscionable and, the unconscionability alone should void the cognovit clause of this adhesion contract.

71. Plaintiff, being a least susceptible consumer acted in good faith and under a fiduciary relationship where the officers of the bank, the officers of the title company, notary, an officer of the state would be participating in the closing not under fraud, deception and in direct violation of Plaintiff's constitutional rights to due process.

72. Plaintiff is aware that in a civil proceeding, acquiescence in the loss of fundamental rights will not be presumed, and, that the rights to due process in a civil judgment are subject to waiver. Plaintiff emphatically states that the contract of adhesion was a take it or leave it offer and the cognovit clause was never an issue raised with emphasis, or even raised at all, by the Defendants during the signing ceremonies.

73. Based upon the Plaintiff's recent extensive study of cognovit notes for this matter; this (1) contract was never open to any

negotiations, for it was a contract of adhesion, as the parties were not parties of equal bargaining power; (2) the Defendants never gave the Plaintiff any extra consideration in order to obtain any confession of judgment (cognovit note) clause, nor was the cognovit issued under any other substantial benefit and/or consideration including and not limited to a reduction in installment payments or reduction in interest rates; (3) there was no contention or acknowledgment that the Plaintiff was aware of the legal (detrimental) consequences of the cognovit provision; (4) this Court should vacate this prejudgment (confession of judgment or cognovit note) as a matter of law for showing that Plaintiff's natural Rights to due process were violated.

74. The clear lack of evidence that Plaintiff ever intentionally, deliberately, and/or knowingly waived her due process rights is further supported by this very Complaint. **Natural rights cannot be waived even if that is the intent of the Plaintiff.**

75. At all times material to this Complaint Plaintiff never waived her constitutional rights to a trial by jury under any circumstances, much less willingly, knowingly, or intentionally.

76. The United States Supreme Court and the great majority of State Supreme Courts have all adopted the concept as; State's that use cognovit procedure was found unconstitutional, unless, the

debtor knowingly and understandingly consented to the
authorization to confess judgment.

77. **In National Equipment Rental, Ltd. v. Szukent, 375, U.S. 311
(1962),** the Court observed: "It is settled …that parties to a
contract may agree in advance to submit to the jurisdiction of a
given court, to permit notice to be served by the opposing party,
or even to waive notice altogether." **Id., at 315-316.**

78. And, in **Boddie v. Connecticut,** supra, the Court acknowledges
that "the hearing required by due process is subject to waiver."
**401 U.S., at 378-379.** In another case on point is from New
Jersey when the Chief Justice described in a rather
condescending tone, "a cognovit note is the loosest way of
binding a man's property that was devised in any civilized
country." **Alderman v. Diament, 7 N.J. L. 197, 198.**

79. The Supreme Court clarified another part of cognovit note when
the Court stated, "we do not presume acquiescence in the loss of
fundamental rights, **Ohio Bell Tel., Co. v. Public Utilities
Comm'n, 301 U.S. 292, 307 (1937),** that standard was fully
satisfied here."

80. The United States Supreme Court (see Plaintiff's Brief in support)
makes it very clear that any one may waive their due process
rights and/or any other right but in order to do so, one must
intentionally, knowingly, deliberately, and voluntarily do so.

81. The consequences or legal detriment to waiving one's Rights must be based only upon an intelligent decision having been presented with the consequences of entering into a agreement having a cognovit clause, (note and/or confession of judgment clause).

82. Because a cognovit note deprives the debtor knowledge and of notice that his or her property is being seized, without recourse, or, without benefit of hearing or appeal, courts demand **"clear and convincing evidence"** that the written waiver is **"voluntary, knowing, and intelligently made."** the question of waiver is factual not presumptive. This, a jury must decide.

83. The Plaintiff is now schooled in the confession of judgment theory through Defendants' application of a hidden within, cognovit note, and, agrees that the knowing and voluntary waiver of one's due process Rights would be pertinent, if, it was truly evident in the present case. Plaintiff agrees that the due process rights to notice and hearing prior to a civil judgment are subject to waiver.

84. Because the cognovit note deprives the debtor of notice that her property is about to be seized, without benefit of hearing, or right to appeal,, courts demand "clear and convincing evidence" that the written waiver was "voluntary, knowing, and intelligently made."

85.   In order for the Defendant to substantially support their position

that Plaintiff did voluntarily waive her due process rights,

defendant states that there was never any warning paragraph,

bold letters, bold sentences and/or no warning statement to merit

any concern on behalf of the Plaintiff. One would think to

guarantee this basic constitutional question, which is now before

this court, the Defendants should have a warning as the following

warning to serve as an example:

**"WARNING –By signing this paper you give up
your right to notice and court trial. If you do not
pay on time a court judgment may be taken
against you without your knowledge and the
powers of a court can be used to collect from you
or your employer regardless of any claims you
may have against the creditor whether for
returned goods, faulty goods, failure on his part to
comply with the agreement, or any other cause."**

86.   Plaintiff once again reiterates that she was never made aware of

any cognovit note and/or confession of judgment at the time of

her entering into the contract with the Defendants, or that,

plaintiff ever knowingly waived any of her constitutionally-

guaranteed rights. Defendants never spent any time on this

subject with Plaintiff.

87.   After carefully examining the executed documents Plaintiff still

cannot find any specific references that she is, in any way,

waived any of her constitutionally-guaranteed rights upon

execution of Defendants' documents.

88. Based upon further review, the Plaintiff never witnessed and/or

was ever verbally instructed, concerning the loss of her due

process rights. Any one may give up their rights, but, only those

specifically bargained for.

89. Further, Plaintiff never knowingly, and voluntarily waived her

rights to notice and hearing, and, was wholly unaware of the

legal consequences appertaining thereto.

90. Plaintiff moves this Court to vacate the illegally obtained

cognovit note and protect Plaintiff's due process Rights from

further willful deprivations by Defendants.

91. This Court must hear the constitutional questions as a matter of

law and have a jury to determine due process violations as

questions of fact.

## C. UNCONSCIONABILITY AND ADHESION CONTRACTS

92. Plaintiff hereby incorporates paragraphs one (1) through ninety-

one (91) as if they are set forth at length herein.

93. Other factors that this Court must take into consideration, besides

the unconstitutionally of the purposefully disguised confession of

judgment, and/or the cognovit note, incognito, but also must

consider contracts of adhesions are procedurally and

substantively unconscionable contracts, and contract foundations

built upon ARCP 60(c) 3, mistakes, inadvertence, excusable

negligence, newly discovered information, fraudulent

conveyance, misrepresentation and fraud in the inducement and

other ARS violations, are not limited to ARS §§13-2320 and 33-

420.

94.     The very existence of a contract is the very heart of our

commercial system as both parties operate in good faith and any

"illegal provisions of the contract are "void," and thus those

provisions were never part of a validly formed contract." *Three*

*Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136,

1140 (9th Cir. 1991), and "voidness" challenges go to the very

existence of a contract provision, and are not merely a defense to

a legally formed contract." And one valid defense that the

Defendants are raising is "unconscionability is not merely a

defensive doctrine but rather it goes to the predicate of whether a

contract was validly formed in the first place." *California*

*Grocers Ass'n, Inc. v. Bank of America*, 22 Cal.App.4th 205,

217 1994): and the "Doctrine of Unconscionability," procedural

and/or substantively are the tools to determine the validity of any

contract thus ignoring for now the four main elements of a

contract.

95.     Plaintiff is raising the unconscionability (**ARS 47-2302**

**Unconscionable contract or clause)** as referenced in "***Blake v.***

*Ecker*, 93 Cal.App.4th 728, 742 (2001)" (the substantive element of unconscionability "traditionally involves contract terms that are so one-sided as to 'shock the conscience' *or that impose harsh or oppressive terms*.") (emphasis added) (citing *Armendariz*, 24 Cal.4th at 114). Any one who would knowingly agree to a non-judicial foreclosure, where the illegal bank appointed trustee has the power to foreclosure on your home at his and/or her whim is ludicrous and would have to be out of their minds.

96.  The contract is procedural unconscionable if " the contract is a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of adhering to its terms without modification or rejecting the contract entirely."; *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal.App.4th 846, 853 (2001) (same); *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 174 (2002), *rev. denied.*

97.  Plaintiff states emphatically that this court should grant the temporary injunction to allow defendants sufficient time to prove the existence of a voidable contract and Plaintiff wishes to and has filed documents that support his intentions and for the creation of a contract there be a mutual or reciprocal assent. Sanford v. Abrams (1888) 24 Fla 181, 2 So 373; Ross v. Savage (1913) 66 Fla 106, 63 So 148; McCay v. Sever (1929)

**98 Fla 710, 124 So 44; United State Rubber Products, Inc. v.**

**Clark (1941) 145 Fla 631, 200 So 385; Mann v. Thompson**

**(1958, Fla App D1) 100 So 2d 634.**

98.     The Plaintiff hereby states that for a valid contract to exist with

the Defendants and/or any creditor, the contract must have <u>assent</u>

<u>be to a certain and definite proposition</u>. For example, this Court

if it were not biased would demand that both sides produce all

the substantial records, including and not limited to the

accounting records for a determination as far as consideration.

**Fincher v. Belk-Sawyer Co. (1961, Fla App D3) 127 So 2d**

**130; Goff v. Indian Lake Estates, Inv. (1965, Fla App D2) 178**

**So 2d 910; Hewitt v. Price (1969, Fla App D3) 222 So 2d 247.**

99.     The Plaintiff contends that without<u> a meeting of the minds of the</u>

<u>parties on an essential element (consideration), there can be no</u>

<u>enforceable contract</u>. **Hettenbaugh v. Keyes-Ozon-Fincher**

**Ins., Inc. (1962, Fla App D3) 147 So 2d 328; Goff v. Indian**

**Lake Estates, Inc. (1965, Fla App D2) 178 So 2d 910.**

100.    The Plaintiff has established enough doubt as to the validity of an

enforceable contract that this court is required to determine the

enforceability of the contract and determined what party

breached the terms and conditions of the contract and in order to

form a valid contract, <u>the parties must have a distinct</u>

<u>understanding</u>, common to both, <u>and without doubt or difference.</u>

Unless all understand alike, there can be no assent, and therefore no contract. **Webster Lumber Co. v. Lincoln (1927) 94 Fla 1097, 115 So 498; Minsky's Follies of Florida, Inc v. Sennes (1953 206 F2d 1; O'neill v. Corporate Trustees, Inc. (1967) 376 F2d 818.**

101. The Plaintiff hereby declares that the defendants and/or any creditor have/has greatly injured the Plaintiff through and not limited to misrepresentation, truth in lending, UDAP and unjust enrichment as a result of the Defendant's and/or any creditor's deliberate, conspired, intentional, maliciously and fraud upon this court and Plaintiff's counsel has violated Professional Code of Conduct and procured this illegal and/or voidable contract which lacks the essential elements of real assent and obtained the Plaintiff's Signature as result of the exercise of duress or undue influence by the other party, or procured by the fraud of one of the parties, lacks the essential element of real assent and may be avoided by the injured party. **Wall v. Bureau of Lathing and Plastering (1960, Fla App D3) 117 So 2d 767.**

102. Being that the Plaintiff is asking for this court to protect Plaintiff's due process rights and stay the sale and provide the Plaintiff with her right to a Trial by Jury for the Plaintiff never agreed to a non-judicial foreclosure and any creditor must prove compliance with all the terms and conditions and specifically

consideration and substantiate <u>actual assent by the parties</u> upon

<u>exactly the same matters is indispensable to the formation of a</u>

<u>contract.</u> **Bullock v. Hardwick (1947) 158 Fla 834, 30 So 2d**

**539: Hettenbaugh v. Keyes- Ozon - Fincher Ins. , Inc (1962,**

**Fla App D3) 147 So 2d 328: General Finance Corp. V.**

**Stratton (1963 Fla App D1) 156 So 2d 664.**

103.  Unconscionability is deemed to exist when a two-prong test is

met, that is when it is established that both procedural and

substantive unconscionability exist. *__Blake v. Ecker, 93 Cal App__*

*__4th 728 (2001).__* **According to Restatement of Contracts (2nd**

**Ed. 1990)** commentary accompanying section 208:

> Gross inequality of bargaining power, together with terms
> unreasonably favorable to the stronger party, may confirm
> indications that the transaction involved elements of deception
> or compulsion, or may show that the weaker party had no
> meaningful choice, no real alternative, or did not in fact assent
> or appear to assent to the unfair terms. <u>Restatement (Second)</u>
> <u>of Contracts, supra, § 208 cmt. d; see also</u> *Plaskett v. Bechtel*
> *Int'l, Inc., 243 F. Supp. 2d 334, 340 (D.V.I. 2003) (quoting*
> *section 208).*
>
> In the end, unconscionability 'requires a two-fold
> determination: that the contractual terms are unreasonably
> favorable to the drafter and that there is no meaningful choice
> on the part of the other party regarding acceptance of the
> provisions." quoting *__Bensalem Township v. Int'l Surplus__*
> *__Lines Ins. Co.,__* **38 F.3d 1303, 1312 (3d Cir. 1994));** see also,
> e.g., *__Seus v. John Nuveen & Co.,__* *146 F.3d 175 at* **184 (3rd**
> **Cir. 1998) and** *__Blake, supra.__*

104.  Most state unconscionability jurisprudence is sub-divided into

two branches: substantive and procedural. Substantive

unconscionability refers to oppressively one-sided and harsh

terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract including unequal bargaining power and hidden contract terms. *Comb v. PayPal Inc., Case No. C-02-1227 and C-02-2777 USDC CA No. Dist. San Jose Div (9th Cir. 2002); Blake, supra; Kloss v. Edward D. Jones & Co., 2002 MT 129; 310 Mont. 123; 54 P3d 1; 2002 Mont. LEXIS 223 (MT Sup Ct 2002).*

105. The process by which a contract comes into existence is at the heart of procedural unconscionability such that the contract in question is typically one of adhesion. **Flores v. Transamerica HomeFirst, Inc.**, 93 Cal App 4th 846 (2001).

106. Analysis of unconscionability begins with an inquiry into whether the contract (Deed of Trust) was a contract of adhesion i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms and the conditions an oppressive, "take it or leave it offer, an inequality of bargaining position when under scrutiny are so one sided that the terms and conditions are so supportive of the superior bargaining power and actually detrimental or no real negotiations and an absence of meaningful choice through an unequal bargaining position of the weaker party. *Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113, 99 Cal. Rptr. 2d*

*745, 6 P.3d 669 (2000). Graham v. Scissor-Tail, Inc., 28 Cal.3d 807, 819, 171 Cal. Rptr. 604, 623 P.2d 165 & n.16 (1981).*

107.  Plaintiff never agreed to place her home in an irrevocable trust, nor, did she ever knowingly agree to have her home subject to a power of sale clause. As a matter of fact, Plaintiff hereby declares that she has never heard of that term power of sale, and, what that term meant, until recently.

108.  Plaintiff likewise, did not know that the term "seised" imparted a wholly different connotation than "seized", whereby, upon recent understanding of Plaintiff, "seised" indicates that Plaintiff actually owned her property free and clear, without encumbrance, prior to signing a Deed of Trust, without benefit of consideration.

109.  The concept of seising, dates back to the middle ages when the serfs, who were made to consider themselves not worthy of owning land, would actually give their properties through seising (gave it away absolutely free) to their masters. Today this unconscionable practice is still be utilized by bankers, constituting an unjust enrichment, through concealment and deception and outright stupidity on this Plaintiff, who suffers from the least susceptible and/or susceptible consumer syndrome.

110. Plaintiff now challenges this practice as being procedural and substantively unconscionable clauses contained in this referenced contract (Deed of Trust) clauses should be challenged by this court as the Deed of Trust, did not/does not represent the true intentions of the plaintiff.

111. Plaintiff would not knowingly agree to the placing an irrevocable trust against her home by any mortgage company and/or banker and would not have given her property to anyone through the middle ages policy of seising. At trial, it would become apparent that the trier of facts could not find an objectively clear and unambiguous expression of mutual intent of these objectionable and substantively unconscionable shocking terms.

112. In the absence of conflicting parol evidence, the interpretation of a written contract is essentially a judicial function subject to independent review by this Court or on appeal. A trial court's threshold determination as to whether there is an ambiguity permitting the admission of parol evidence is also a question of law subject to independent review.

113. If parol evidence is admissible, and the competent parol evidence is in conflict, the construction of the contract becomes a question of fact. However, if the parol evidence is not conflicting, the appellate court will independently construe the writing.

114. The duty of this Court is to schedule a hearing and permit the Defendants to actually produce documented evidence that Plaintiff, understood that she was already lawfully seised of her property, prior to signing the Deed of Trust, and thereafter, knowingly, intentionally, and, deliberately agreed to a (unseen) power of sale clause, and, irrevocable grant, executed, without consideration, to the sole benefit of Defendants'.

115. However, this Court should also recognize the risk that such provisions may be included in a trust deed or mortgage without the debtor's knowledge or understanding. Clauses such as this are often termed "dragnet" or "anaconda," as by their broad and general terms they enwrap the unsuspecting debtor in the folds of indebtedness and deceptive practices (concealing deceptively, the power of sale clause in which Plaintiff never was told and/or knew that it was actually part of her contract).

116. These Defendant(s) operators through the fiduciary relationship (bank are licensed by the Federal Government and are held in a fiduciary duty) are not being trustworthy and honest and fair, but unfortunately, are embraced and secured in the mortgage which Plaintiff did not contemplate. Because their apparent coverage is so broad, and because the mortgagor is often unaware of their presence or implications, this court should construe these dragnet clauses narrowly against the mortgagee.

117. The proponent of a dragnet clause bears the burden of establishing that the parties intended all existing or contemporaneous clauses to be included within its scope. A trust deed containing a dragnet clause that is printed on a standard bank form is considered a **contract of adhesion** under Arizona law.

118. Although **contracts of adhesion** are generally enforceable according to their terms, a provision contained in such a contract cannot be enforced if it does not fall within the reasonable expectations of the weaker or adhering party.

119. This Court should examine a number of factors in determining whether a broadly worded dragnet clauses (Seised and irrevocable trust) was mutually intended by the parties to be included in the terms and conditions: (1) the language and specificity of the dragnet clause; (2) whether the parties were aware of the dragnet clause and appreciated its significance and would have benefited by their existence; (3) were the clauses procedurally and/or substantively unconscionable and benefited the one party at the expense of the other party taking into account the degree of negotiability being exerted upon the smaller party with inferior bargaining position against the larger party with superior bargaining power.

120. The Defendant's intentional concealment of the Power of Sale Clause in the Deed of Trust further inures Plaintiff's allegations of deceptive intentions of the Defendants.

121. Plaintiff hereby avers that for this Court to precede with this sale, this Court must find an objectively and clear unambiguous expression of mutual intent to where the Plaintiff intentionally, deliberately, knowingly desired to place her home into a non-revocable trust, to allow the Defendant's to have her home seised, power of sale and knowingly waived her of her due process rights including and not limited to trial by jury. This Court has in its inherent authority and the duty to stop this "Deed of Trust Sale" upon the unsuspecting mortgagor in the folds of indebtedness embraced and secured in the mortgage which she did not contemplate or understand their presence or implications.

122. However, "[t]here are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against her . . . The second - a principle of equity applicable to all contracts generally - is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if,

considered in its context, it is unduly oppressive or 'unconscionable.

123. The irrevocable trust, the hidden power of sale clause due process violations and the seising clauses are four examples of Defendant's procedural and substantively violations of unconscionability thus voiding this contract.

124. A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it" *(Armendariz v. Foundation Health Psychcare Serv., 24 Cal 4th 83 at 113 (2000); reflected in Martinez v. Master Protection Corp., 118 Cal. App. 4th 107; 2004 Cal. App. LEXIS 638 (2004)* -- is not unconscionable merely because of disparity of the parties' bargaining position *(Gilmer v. Interstate/Johnson Lane Corp., 500 US 20; 114 L. Ed. 2d 26, 111 St. Ct. 1647 (1991).* Rather, the procedural unconscionability must co-exist with substantive components that include harsh or one-sided results that "shock the conscience". Soltani v. West. & So. Life Ins. Co., 258 F.3d 1038 (9th Cir. 2001); Ferguson v. Countrywide Credit Industries, Inc., 298 F.3d 778; 2002 U.S. App. LEXIS 14739 (9th Cir. 2002); Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101; 2003 U.S. App. LEXIS 14607 (9th Cir. 2003).

125. When a party to a contract possesses far greater bargaining power (Defendants and/or any creditor) than another party (Plaintiff), or when the stronger party pressures, harasses, or compels another party into entering into a contract, "'oppression and, therefore, procedural unconscionability, are present." **Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, at 1172 (9th Cir. 2003) (quoting Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778 (9th Cir. 2002); Kinney v United HealthCare Services, Inc., 70 Cal App 4th 1322 (1999).**

126. Substantive unconscionability addresses the fairness of the term in dispute. It traditionally involves contract terms that are so one-sided as to "shock the conscience," or impose harsh or oppressive terms. Historically, courts looked to the common law for discerning the existence of substantive unconscionability as in *Rakoff, Contracts of Adhesion:* **An Essay in Reconstruction, 96 Harv. L. Rev. 1173, 1179-1180 (1983); Slawson,** Mass **Contracts: Lawful Fraud in California,** *48 S. Cal. L. Rev. 1, 12-13 (1974); K. Llewellyn,* **The Common Law Tradition** *370-371 (1960).*

127. "The common law, recognizing that standardized form contracts account for a significant portion of all commercial agreements…subjects terms in contracts of adhesion to scrutiny for reasonableness." Judge J. Skelly Wright set out the state of

the law succinctly in *Williams v. Walker-Thomas Furniture Co., 121 U. S. App. D. C. 315, 319-320, 350 F. 2d 445, 449-450 (1965) (footnotes omitted):*

128. "Ordinarily, one who signs an agreement without full knowledge of its terms might be held to assume the risk that he has entered a one-sided bargain. But when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all of the terms. In such a case the usual rule that the terms of the agreement are not to be questioned should be abandoned and the court should consider whether the terms of the contract are so unfair that enforcement should be withheld."

D.  **MERS**

129. Plaintiff hereby incorporates paragraphs one (1) through one hundred and twenty-eight (128) as if they are set forth at length herein.

130. Defendant, MERS does not have the power to assign, nor holds no power whatsoever, other than that as a tracking agent.

131. Allegedly, Plaintiff's Deed in Trust was assigned without notice to Plaintiff, which, absent the holder expressly granting onto Defendant MERS, Beneficiary status.

132. MERS, acting in the capacity of beneficiary, following the assignment of the underlying note(s), Defendant MERS does not have the power to convey substitution of Trustee, or cause Plaintiff's property to be sold.

133. In **Mortgage Elec. Reg. Sys. V. Nebraska Dept. of Banking**, 270 Neb. 529, 704 N.W. 2d 784 (2005) Defendant MERS argued that it was not authorized to engage in the practices that would make it a party to either the enforcement of mortgages or the transfer of mortgages.

134. "MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its services through membership fees charged to its members. MERS does not receive compensation from consumers." **270 Neb. At 534.**

135. **Moreover, MERS does not own the promissory note, which is required, as coupled to the Deed in Trust in order to cause sale of property following default.**

136. "[I]t is not uncommon for notes and mortgages to be assigned, often more than once. When the role of the servicing agent acting on behalf of a mortgagee is thrown into the mix, it is no wonder that it is often difficult for unsophisticated borrowers to be certain of the identity of their lenders and mortgagees." **In re Schwartz**, 336 B.R. 265, 266 (Bankr. D. Mass. 2007)

137. Plaintiff contends this is exactly the point of Defendant MERS and its participants: To obscure from the public the actual ownership of the mortgage and/or Deed in Trust, proceeding, un-impeded, thereby creating endless opportunities for substantial abuses and prejudice to befall mortgagors, all for the expressed purpose of unbridled profiteering.

138. Moreover, questions arise as to whether both the promissory note and the Deed in Trust have traveled hand in hand. Upon information and belief of Plaintiff, often these notes are bifurcated into the stream of commerce as to maximize their potential for profit.

139. The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note.

140. The Missouri court found that, because MERS was not the original holder of the promissory note and because the record

contained no evidence that the original holder of the note authorized MERS to transfer the note, the language of the assignment purporting to transfer the promissory note was ineffective. "MERS never held the promissory note, thus its assignment of the deed of trust to Ocwen separate from the note had no force." **Bellistri v. Ocwen Loan Servicing, LLC** 284, S.W. 3d 619, 623 (Mo. App.2009)

141. If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right.

142. A Federal Court in Nevada similarly attacked MERS' purported "authority", finding that there was no evidence that MERS was the agent of the note's holder (In Re: **Joshua and Stephanie Mitchell**, Case No. BK-S-07-16226-LBR [U.S. Bankruptcy Court, District of Nevada, Memorandum Opinion of August 19, 2008].

143. The Court of Common Pleas of Sumter County, South Carolina also found that MERS' rights were not as they were represented to be; that MERS had no rights to collect on any debt because it did not extend any credit; none of the borrowers owe MERS any money; that MERS does not own the promissory notes secured by the mortgages; and that MERS does not acquire any loan or extension of credit secured by a lien on real property. **Mortgage Electronic Registration Systems, Inc. v. Girdvainis**, Sumter

County, South Carolina Court of Common Pleas Case No. 2005-CP-43-0278 (Order dated January 19, 2006, citing to the representations of MERS and court findings in **Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking and Finance**, 270 Neb. 529, 704 NW 2d. 784). As such, ALL MERS assignments are suspect at best, and may in fact be fraudulent.

144. Consequential to the above and other state cases, precedent, MERS is and/or being foreclosed from continuing their previously unfettered operations in numerous states.

145. In consideration of the aforegoing statements, plaintiff has attached an Affidavit of Truth in support thereof.

E.    **ARIZONA RULES**

146. Plaintiff hereby incorporates paragraphs one (1) through one hundred and forty-five (145) as if they are set forth at length herein.

147. Plaintiff, further petitions this court under authority of the following:

**ARIZONA RULES OF CIVIL PROCEDURE 60(c)**

148. And ARCP Rule 55(c), <u>Setting Aside Default Judgment,</u> 55(c) "… if a judgment by default has been entered; the court may set it aside in accordance with Rule 60(c)".

149. This Court has the authority to fully exercise its powers to determine constitutional issues, and, to relieve Plaintiff from a final judgment, order, or proceeding, and, may order a new trial or grant other relief as may be just for the following reasons:

150. The plaintiff hereinafter states for good cause as follows: This foreclosure and/or trustee sale must be stopped, or in the alternative, Defendants' be enjoined from selling, converting and/or otherwise disposing of plaintiff's property until all the material facts become known and clarified, as to the salient constitutional issues being now raised by Plaintiff. Plaintiff states for good cause as follows: the fact that a trial judge is duty bound to vacate judgments obtained through cognovit clauses or hidden within sentence structure where debtor presents jury questions is a complete answer to the contention that unbridled discretion governs the disposition of petitions to vacate.

151. Other violation include, but are not limited to, Misrepresentation was practiced against Plaintiff when the improper trustee in a respondeat superior, apparent authority, maintenance and a champerty relationship, obtaining a judgment by confession (cognovit note) and/or "void" judgment warranting an illegal sale through misrepresenting of true established facts and misleading this honorable Court under ARS §33-420 and §13-2320 by Defendants committed felony fraud by advancing writings which they knew were false with the intent that the Court would rely on them to deprive And/or any creditor's, of _**money, property, and rights.**_

152. Defendants, knew, or should have known, that the Plaintiff's due process rights are being violated for Plaintiff does not understand the terminology and the true meaning of these terms were intentionally concealed from Plaintiff in a conspiratorial nature.

153. Plaintiff claims that the Arizona confessed judgment and/or cognovit note must be opened, for Plaintiff has proven a jury question of fact, that is, if his evidence or the Defendant's lack of evidence would be sufficient to prevent a directed verdict against the Plaintiff and this standard is a minimal obstacle.

154. For this Court to deny Plaintiff her constitutional safeguard is not worth violating Plaintiff's due Rights in order for the Defendants to sell the Plaintiff's property. The Defendants can and will recoup their damages and suffer no adverse financial hardship if they can substantiate that the Plaintiff intentionally waived his Rights to due process of the law.

155. All litigants have a constitutional right to have their claims adjudicated according to the rule of precedent. See <u>Anastasoff v. United States,</u> 223 F.3d 898 (8th Cir. 2000).

156. Further, Plaintiff never knew that she was entering into a non-judicial foreclosure contract and was never advised that she was unknowingly waving his Federal and State Constitutional rights to have a trial by Jury. "We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted." **Mattox v. U.S., 86 S.Ct. 237 (1938).**

157. "By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -- (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."

158. **ARCP 56(e) Form of Affidavits; Further Testimony; Defense Required...** Supporting and opposing affidavits shall be made on personal knowledge, shall be set forth such facts as would be admissible in evidence, and ***shall show affirmatively that the affiant is competent to testify to the matters stated therein.*** Sworn or **certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.** The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of the adverse party's pleading but **must present specific facts showing that there is a**

**genuine issue for trial.** If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

159. **ARCP 56(g) Affidavits Made in Bad Faith ...** "Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in <u>bad faith</u> or solely for the purpose of delay, the court shall forthwith order the party submitting them to pay to the other party the amount of the reasonable expenses, which the filing of the affidavits causes the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt."

160. The unidentified Substitute Trustee, Defendants refused to identify the trustee, violated Rules of Professional Conduct, Rule 8.4, Misconduct (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) state or imply an ability to improperly influence a government agency or official; or, (e) knowingly assist a judge or judicial officer in conduct that is in violation of applicable rules of judicial conduct or other law.

161. **ARCP 60(c) Mistakes; Inadventence; Excusable Neglect; Newly Discovered Evidence; Fraud; etc....** On motion and upon such terms as are just, the court may relieve a party from a final

judgment, order, or proceeding and may order a new trial or grant
such other relief as may be just for the following reasons"

(1)     Mistake, inadvertence, surprise or excusable neglect;

(2)     Newly discovered evidence which by due diligence could
not have been discovered in time to move for a new trial
pursuant to Rule 60(c).

(3)     Fraud   (whether heretofore denominated intrinsic or
extrinsic), misrepresentation, or other misconduct of an
adverse party;

(4)     The judgment is void.

162. The intentional deceptive nature of the Defendants, this court should
grant the temporary injunction in the name of justice and a matter of
good law. "Where administrative action may result in the loss of
property and/or life, or of all that makes life worth living, and doubt
as to the extent of power delegated to administrative officials is to
be resolved in citizen's favor and court must be especially sensitive
to the citizen's rights where proceeding is non-judicial." **United
States v. Minker, 350 U.S. 179; 76 S. Ct. 281 (1956).**

163. Plaintiff hereby charges the Defendants and Defendants, yet to be
named and/or their trustee with violating Arizona Revised Statutes,

§13-2320 and specifically charges Chase Bank with knowingly, intentionally, deliberately, maliciously with malice committed residential Mortgage concealment of facts in order to through their fiduciary relationship with the Plaintiff with the intent to defraud, the person does any of the following: ***Any person guilty of falsely preparing any book, paper, affidavit,*** instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced as genuine upon any, proceeding authorized by law, <u>SHALL BE GUILTY OF A FELONY.</u>

164. A person commits residential fraud if, with the intent to defraud, the person does any of the following:

1.      Knowingly makes any deliberate misstatement, misrepresentation or material omission during the mortgage lending process that is relied on by the mortgage lender, borrower or other party to the lending process.

2.      Knowingly uses or facilitates the use of any deliberate misstatement, misrepresentation, misrepresentation or material omission during the mortgage lending process that is relied on by the mortgage lender, borrower or other party to the mortgage lending process.

3.      Plaintiff states; Plaintiff's and or any creditor's attorney and all the alleged creditors are very aware of the misleading and deceptive nature of their banking operation. They have used

deliberate misstatement, misrepresentation, and misrepresentation or material omission and has committed fraud upon this court through deceitfulness and deceptive and fraud upon this court and in the name of justice this Court must grant the Plaintiff's relief.

### F. <u>STATE LAW GOVERNS VALIDITY OF CONTRACT</u>

165. Plaintiff hereby incorporates paragraphs one (1) through one hundred and sixty-five (165) as if they are set forth at length herein.

166. It is widely accepted under contract law that there are four essential elements of a valid contract the contract must contain four essential ingredients of a binding promise: 1, Manifestation of mutual assent, 2, consideration, 3, legality 4, Capacity of the parties and if all of these elements are present, the terms and conditions are binding upon both parties. Accordingly, in order for a valid contract as to the selection of the terms and conditions both parties must have the same amount of input and binds the parties to all the terms and conditions as agreed and both parties having a complete understanding of what was bargained for and agreed to.

167. "<u>Nothing can be more material to the obligation than the means of enforcement.</u> Without the remedy the contract may, indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties <u>which depend for their fulfillment wholly upon the will of the individual.</u> The ideas of

validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the Constitution against invasion. The obligation of a contract 'is the law which binds the parties to perform their agreement." **RED CROSS LINE vs. ATLANTIC FRUIT COMPANY. 264 U.S. 109, 68 L. Ed. 582, 44 S. Ct. 274 February 18, 1924 Decided.**

168.    It is Plaintiff's contention that Defendants and/or any creditor pre-selection of their trustee without any input from the Plaintiff is not only illegal but ranks of a conspiratorial nature for the appointed trustee is a repeat player and never supports the Plaintiff for the trustee makes the greatest majority of their money on foreclosures. This prearranged conspiratorial agreement is substantively and procedurally unconscionable and being that there were no essential elements of a contract the non-judicial action are nothing more than a well planned to steal the real property of the inspecting American people through an expansion and a contraction of the total money supply, thus denying the very elements of the people's constitutional rights to life, liberty and the pursuit of happiness.

169.    Plaintiff informs this court of their constitutional duty (Oath) that this court is required to under their Constitutional oath to protect and defend the Constitutional rights of the individual against this corporate giant and ask this court to protect the Plaintiffs rights according to the "Law of the land," "due process of law," and "due

course of law" are synonymous. **People v. Skinner, Cal., 110 P.2d 41, 45; State v. Rossi, 71, R.I. 284, 2d 323, 326; Direct Plumbing Supply Company v. City of Dayton, 138 Ohio St. 540, 38 N.E. 2d 70, 72, 137 A.L.R. 1058; Stoner v. Higginson, 316 Pa. 481, 175 A. 527, 531.**

170.   The term "due process of law," and "natural rights" as used in the federal constitution and/or the Declaration of Independence, has been repeatedly declared to be the exact equivalent of the phrase "law of the land" as used in the **Magna Charta. 16 Am. Jur. 2d 547;**

171.   Plaintiff hereby state that if this court should deny Plaintiffs request for Due Process of Law, or Law of Land that this court has to protect the Plaintiffs rights to have this case heard before a jury of the Plaintiffs peers and any other arrangement would be a great travesty upon our million boys and girls who lost their lives in the protection of this country from all it's enemy, both domestic and foreign. **Kansas Pac. RY. CO. V Dunmeyer 19 KAN 542; Murray v. Hoboken Land Co., 59 U.S. (18 How) 272.**

172.   Plaintiff states that Amendment V of the Constitution of the United States provides the same answer being raised by the Plaintiff that: **"No person shall be deprived of life, liberty, or property without due process of law. A similar provision exists in all the state constitution; the phrases "Due Course of Law", and the "Law of the Land" are sometimes used; but**

**all three of these phrases have the same meaning and that applies conformity with the ancient and customary laws of the English people or laws indicated by parliament. Davidson v. New Orleans 96 U.S. 97, 24, L Ed 616.**

173. The constitutions of the United States and the Arizona constitution makes it illegal for any one to take property without just compensation and by this amendment (5th) their can be no proceeding against life, liberty, or property which may result in the observance of those general rules established in our system of Jurisprudence for the security of private rights which guarantees to each citizen the equal protection of the laws and prohibits a denial thereof by any Federal official." (See rights) **Bolling v. Sharpe, 327 U.S. 497. U.S. vs Kuwzbzva (DC-CAL) 56F Supp. 716.**

174. To Recap: the actions undertaken by said Defendants' is predicated upon a cognovits note, under the guise of a Deed of Trust.

175. Plaintiff did not enter into this Deed of Trust, which now operates as a cognovits note/confession fo judgment, voluntarily, intelligently, and knowingly in waiving, what Plaintiff has come to painfully learn, was waiver of her due-process and other important rights.

176. Plaintiff at no time waived any of her rights will full awareness of the legal consequences. The cognovits note/Deed of Trust is one of unequal bargaining power. The Cognovit note/Deed of Trust is a contract of adhesion.

179. Plaintiff, who was never informed of the contents of the Deed of Trust which contained hidden cognovits clauses, never obtained adequate consideration for having unknowingly waived her rights.

180. At no time, was the execution of said Deed of Trust the product of any negotiations carried out by the parties where Plaintiff had or was able to rely upon the advice of competent counsel.

181. Because of the nature of the cognovits note/Deed of Trust, Plaintiff was rendered defenseless under state law. See 46 Am. Jur. 2nd Judgments §230.

WHEREFORE, Plaintiff respectfully prays upon this court to grant Plaintiff an Emergency Temporary Restraining Order with additional Request for Declaratory and Injunctive relief; to Vacate the Sale of Plaintiff's property and to void the Deed of Trust, upon which it relies, and to further enjoin the above-named defendants, as well as any party, yet named defendant, from Selling, Converting, or, by any means whatsoever, Dispossessing Plaintiff of her Property, including, but not limited to an immediate Stay of the Forcible Detainer hearing as currently set for January 22, 2010, until all Facts, are Clarified, as to be determined following the completion of discovery, which is now pending, and, to provide plaintiff, thereafter, Oral Argument, and/or any other relief this court deems just and proper.

Respectfully Submitted, _Rachael Earl_

JURAT:

SUBSCRIBED AND SWORN TO before me by _____ and substantiates the authenticity of the Affidavit as true and correct and verifies this statement as what it was intended to say on this ___19___ day of ~~January~~, 2010.
February

Maricopa County
Notary Public for Arizona

TIMOTHY E. O'NEIL
Notary Public - Arizona
Maricopa County
My Comm. Expires Jan 28, 2011

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| Rachael A. Earl | ) | CASE NO. |
| Plaintiff | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT |
| | ) | FOR EMERGENCY |
| Freedom Home Mortgage Corporation; | ) | DECLARATORY AND |
| Mark S. Bosco, Michael A. Bosco Jr., | ) | INJUNCTIVE RELIEF TO |
| Mortgage Electronic Registration Systems, | ) | VOID POWER OF SALE |
| Inc., Arizona Title Agency, Inc., and, | ) | |
| John Doe and Jane Doe, one up | ) | JURY TRIAL DEMANDED |
| Defendants | ) | |

## AFFIDAVIT

I, the Plaintiff, Rachael A. Earl, being of adult age, competent to testify, do state that the truths and facts herein are based upon my understanding, beliefs, information and first hand requisite personal knowledge do hereby state under the Perjury Clause do hereby state and proclaim that the following information is true, correct, complete, certain, not misleading so help me God.

1. Affiant is of legal age and competent to testify.

2. Affiant has first hand knowledge of the facts stated herein.

3. Affiant hereby declares that there are indeed material facts in dispute regarding the trustees, grantor, and hereby declares based upon their information that Plaintiff is the real and legal trustees of said questioned property and this can be proven if given a chance in the name of justice and honesty..

4. Affiant has not seen or been presented with any fact or evidence that any of the Defendant's is the real holder in due course and believes that none exists.

5. Affiant believes that MERS is not the legal beneficiary and has absolutely right to assign anything to anybody.

6. Affiant has not seen or been presented with any fact or evidence that Plaintiff and/or any creditor has in its possession the Original Unaltered Promissory Note and believes that none exists.

7.    Affiant has not seen or been acquainted with any of the following terms, A. Power of Sale Clause; B. Seising; C. Cognovit note; D. Confession of judgment note; E. Contract of adhesion; F. Procedural unconscionability; G. Substantively unconscionability; H. Trustor; I. Irrevocably

8.    Defendants never explained any of the above mentioned terms as required under the Truth and Lending Laws

9.    Affiant never knew that she was agreeing to irrevocable trust.

10.    If Affiant would have been informed of all the consequences of the deceptively hidden damaging clause, Plaintiff would not have ever agreed to such harsh and detrimental clauses.

8.    Affiant has not seen or been presented with any fact or evidence that clearly identifies the real trustee having the authority to invoke the power of sale clause having shocked the conscience of the Affiant.

9.    Affiant has not seen or been presented with any fact or evidence that and of the Defendant(s) and/or any creditor is the real trustee and has the legal right and/or contract right to foreclose for failure to give and/or prove consideration and believes that no contract exist that proves consideration.

10.    Affiant has not seen or been presented with any fact or evidence that Defendant(s) and/or any creditor properly informed Affiant that she was waiving any of her rights.

11.    Affiant hereby declares that under the Natural Rights of Man, which predates the united States Constitution, the natural rights of man cannot not be waived.

12.    Affiant has not seen or been presented with any fact or evidence that Defendant(s) and/or any creditor followed any of the truth and lending laws and Defendant avers that the Defendant(s) has no such evidence, so this Court must grant Plaintiff's injunction and have a hearing to determine whether Affiant was advised concerning the consequences of executing the Deed of Trust.

13.    Affiant has not seen or been presented with any fact or evidence that Defendant(s) and/or creditor did not alter the Original Promissory Note by affixing an Allonge to the Note and believes that none exists.

14.    Affiant has not seen or been presented with any fact or evidence that Defendant(s) and/or any creditor can demand and require payment in any particular form of money and believes that none exists.

15.     Affiant has not seen or been presented with any fact or evidence that the pleading (confession of judgment and/or cognovit and/or void judgment note) submitted by Defendant(s) to the court were true, correct, complete, and not misleading, and believes that none exists.

16.     Affiant has not seen or been presented with any fact or evidence that the submissions submitted to the court by Defendant(s) were sworn under penalty of perjury and believes that none exists.

17.     The actions undertaken by said Defendants' is predicated upon a cognovits note, under the guise of a Deed of Trust.

18.     Affiant did not enter into this Deed of Trust, voluntarily, intelligently, and knowingly in waiving, what Plaintiff has come to painfully learn, was waiver of her due-process and other important rights.

19.     Affiant at no time waived any of her rights will full awareness of the legal consequences.

20.     The cognovits note/Deed of Trust is one of unequal bargaining power.

21.     The Cognovit note/Deed of Trust is a contract of adhesion.

22.     Affiant, never obtained adequate consideration for having waived her rights.

23.     At no time, was the execution of said Deed of Trust the product of any negotiations where Affiant had or was able to rely upon the advice of competent counsel.

24.     Because of the nature of the cognovits note/Deed of Trust, Affiant was rendered defenseless under state law. See 46 Am. Jur. 2nd Judgments §230.

Further, Affiant saith not, and believes that none exists.
DATED:  the _____ day of January, 2010 I, the First month, in the year 2010.


                                        _Rachael Earl_
                                        Rachael A. Earl

JURAT:

SUBSCRIBED AND SWORN TO before me by
_____ and substantiates the authenticity of the Affidavit
as true and correct and verifies this statement as what it was intended to say on
this ___19___ day of ~~January~~, 2010.
              february

Maricopa County Notary Public for Arizona ___/_____

                                        TIMOTHY E. O'NEIL
                                        Notary Public - Arizona
                                        Maricopa County
                                        My Comm. Expires Jan 28, 2011

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | | |
|---|---|---|
| Rachael A. Earl | ) | CASE NO. |
|      Plaintiff | ) | |
| | ) | |
| v. | ) | VERIFIED COMPLAINT |
| | ) | FOR EMERGENCY |
| Freedom Home Mortgage Corporation; | ) | DECLARATORY AND |
| Mark S. Bosco, Michael A. Bosco Jr., | ) | INJUNCTIVE RELIEF TO |
| Mortgage Electronic Registration Systems, | ) | VOID POWER OF SALE |
| Inc., Arizona Title Agency, Inc., and, | ) | |
| John Doe and Jane Doe, one up | ) | JURY TRIAL DEMANDED |
|      Defendants | ) | |

## CERTIFICATE OF SERVICE

The Plaintiff, Rachael A. Earl hereby serves the above documents upon the following

Defendants as listed below by regular first class U.S. Mail prepaid, on February ___ 2010 and

by fax as follows:

Freedom Home Mortgage Corporation
907 Pleasant Valley Avenue
Mt. Laurel, New Jersey 08054

Arizona Title Agency
4041 N. Central Avenue, No. D-
Phoenix, Arizona 85012

Mark S. Bosco
2525 E. Camelback Road, Suite 300
Phoenix, Arizona 85016

Michael J. Bosco, Jr.
Third Fl., Esplanade II
2525 E. Camelback Rd.
Phoenix, Arizona 85016

Mortgage Electronic Registration System, Inc.
7301 BayMeadows Way
Jacksonville, Florida 32256

By:_____
     Rachael Earl